1  Erin R. Ranahan (SBN: 235286)
   *eranahan@winston.com*
2  WINSTON & STRAWN LLP
   333 S. Grand Avenue
3  Los Angeles CA 90071-1543
   Tel:   (213) 615-1700
4  Fax:   (213) 615-1750

5  Attorneys for Movant
   *Dell Inc.*

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  *In re Third Party Subpoena from*      Case No.
    *Eastern District of Texas:*
12                                          (Eastern District of Texas Case No.
                                            2:14-cv-00762)
13  DELL INC.,
                                            **JOINT STIPULATION PURSUANT**
14                      Movant,             **TO LOCAL RULE 37-2**
                                            **REGARDING DELL'S MOTION TO**
15          vs.                             **COMPEL ACACIA TO COMPLY**
                                            **WITH SUBPOENA**
16
    ACACIA RESEARCH GROUP LLC,             DATE:
17                                          TIME:
                        Respondent.         DEPT.:
18

19                                          Discovery Cutoff Date:  9/7/15
20                                          Pretrial Conference Date: 11/30/15
                                            Trial Date:  1/11/16
21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1
2

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTORY STATEMENTS .................................................... 1

   A.   MOVANT'S INTRODUCTORY STATEMENT ................................ 1

   B.   ACACIA'S INTRODUCTORY STATEMENT ................................ 3

II.   REQUESTS IN DISPUTE AND ARGUMENTS ........................................ 6

   A.   Category 1—Unredacted copies of all relevant global and standstill agreements, including the agreements with Microsoft, Oracle, Cisco, and Apple. Request No. 2 ........................................ 7

      1.   Requests ................................................................ 7

      2.   Movant's Argument .................................................... 8

      3.   Acacia's Argument .................................................. 10

      a)   Movant's Requests For Documents And Testimony Are Untimely. ............................................. 11

      b)   The Requested Agreements With Microsoft, Cisco, Oracle, and Apple Are Not Responsive To Request No. 2 And Are Not Relevant Because The Agreements Do Not Provide Any License To Any Asserted Or Related Patent. ................................ 12

      c)   Redactions In The Produced Global Agreements And Withholding Of The Apple Standstill Agreement Are The Result Of Acacia's Honoring The Objections And Requests Of Microsoft, Cisco, Oracle, And Apple, Consistent With Acacia's Contractual Confidentiality Obligations. .................................... 16

   B.   Category 2— All communications with Silicon Image and Apple related to the Asserted Patents.  Request Nos. 4 and 6. ..................... 18

      1.   Requests ............................................................... 18

      2.   Movant's Argument ................................................... 20

      3.   Acacia's Argument .................................................. 22

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

i

a) Nexus Already Produced All Non-Privileged Documents Responsive To Request No. 4 Concerning The Asserted Patents And Movant Abandoned This Request During The Meet And Confer. ..................................................................................22

b) Nexus Has Produced All Responsive, Non-Privileged Documents For The Asserted Patents Under Request No. 6; Acacia Is Voluntarily Producing All Responsive, Non-Privileged Documents For The "Related Patents," Even Though Those Documents Are Not Relevant...........................................26

c) Request No. 6 Pertaining To Apple Is Not Relevant To Litigation And Acacia Is Honoring Apple's Refusal To Consent To Authorizing Acacia To Produce This Document...................27

C. Category 3—Documents related to Acacia's and Silicon Image's activities regarding the Asserted Patents.  Request Nos. 4, 5, 6, 8 and 16. ..............................................................................28

   1. Requests .................................................................28

   2. Movant's Argument ................................................32

   3. Acacia's Argument ................................................35

a) Requests Nos. 4, 6, 8, And 16 Regarding The Asserted Patents Should Be Denied Because Movant Already Received All Non-Privileged Documents From Nexus And Suggests No Reason For Acacia To Duplicates Its Efforts...........................................36

b) Request Nos. 6  And 8 For The Related Patents Are Moot Because Acacia Will Serve A Revised Privilege Log And Produce All Non-Privileged Responsive Documents On Later Than October 2, 2015. ....................................43

D. Category 4—A witness to provide testimony regarding the documents and communications produced in response to 1-3 above.  Topic Nos. 2, 4, 10, and 17.....................................44

   1. Requests .................................................................44

   2. Movant's Argument ................................................50

   3. Acacia's Argument ................................................52

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

ii

# I.   INTRODUCTORY STATEMENTS

## A.   MOVANT'S INTRODUCTORY STATEMENT

Dell Inc. ("Dell") ("Movant") move the Court pursuant to Rules 37(a)(2) and 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure and Local Rule 37 to compel Acacia Research Group LLC ("Acacia") to comply with Movant's Subpoenas to Produce Documents and a Witness for Deposition.

On April 29, 2015, Dell served the first subject subpoena in connection with Eastern District of Texas Case No. 2:14-cv-00762.  (Ranahan Decl., Ex. A [Dell Subpoena to Acacia Research Group].)[1]   In that suit, Movant are defending themselves from claims by Acacia subsidiary, Nexus Display Technologies LLC ("Nexus") ("The Nexus Litigation"), that Movant infringe U.S. Patent No. 7,295,579; U.S. Patent No. 7,599,439; U.S. Patent No. 5,835,498; and U.S. Patent No. 7,143,328 ("The Asserted Patents").  In July 2015, Dell served its subpoena for testimony in the same case. [Ex. H.]

Acacia is a third party in name only; Nexus exists merely to initiate lawsuits on Acacia's behalf.  To this day, Nexus has no employees, no real property, and no office presence.  The door of its corporate address simply says:  "Acacia Research Group LLC."   Nexus's CEO is Acacia's CEO.  Nexus's board is comprised of Acacia employees.  Nexus's documents are located on Acacia servers.[2]   Nexus' corporate representative, Cristin Wagner, was also designated as Acacia's corporate witness.  On July 30, 2015, Movant proceeded with the 30(b)(6) deposition of Nexus and learned, for the first time, that Acacia had several agreements ("global and standstill agreements") that provided rights to several third parties to all of the patents owned by Acacia and its subsidiaries, including the Asserted Patents.[3]   Specifically, Nexus entered into global and standstill agreements with at least Microsoft, Oracle, Cisco,

---

[1] Exhibit citations herein are to the concurrently filed Declaration of Erin Ranahan.
[2] Ex. E, Mar. 25, 2015 Deposition Transcript of Marvin Key, 7:15-8:12, 10:14-22, 45:10-46:8, 46:9-46:24; 79:4-20.
[3] Ex. B, Wagner Deposition at 23:2-27:17, 54:10-55:3.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

and Apple.  Movant also learned that there may be additional agreements that neither Nexus nor Acacia had previously disclosed to Dell.  On August 5, 2015, Movant met and conferred with Acacia and Nexus and requested the global and standstill agreements and all communications with Silicon Image[4] and Apple regarding the Asserted Patents.  Acacia responded that it provided all relevant documents and agreements in its possession, custody, or control to Nexus and that Acacia was under no obligation to independently search its own files for and produce relevant documents and agreements.  During the meet and confer, counsel for Nexus confirmed that Acacia did not provide the global and standstill agreements to Nexus.  On August 12, 2015, Acacia agreed to produce the following materials:  "global agreements," "communications related to the ARC [sic] agreement with Apple, related to the Asserted Patents," and "non-privileged documents related to the first license agreement with Silicon Image."  After Acacia failed to produce any documents, Movant requested another meet and confer.[5]

On September 8, 2015, Acacia produced six heavily redacted agreements with Oracle, Microsoft, and Cisco and a privilege log identifying 81 documents that it is withholding on the basis of privilege.  Acacia failed to produce any of the relevant communications with Apple and Silicon Image or its agreement with Apple stating, for the first time, that its "production of the third-party agreements was contingent on receiving consent from the relevant parties, and Apple has not consented to [Acacia's] disclosure of the agreement or related communication."  Without any justification, Acacia redacted all of the most relevant information (e.g., payment, licensing terms, marking requirements, and patents included) from each of the agreements it produced.  Most of the documents identified on Acacia's privilege log were exchanged between third parties—Silicon Image, the previous owner of the patents-in-suit and Acacia—during an arms-length negotiation for the sale of the Asserted Patents.  Thus, to the

---

[4] Silicon Image, the original Assignee of the Asserted Patents who sold it rights to the Asserted Patents to Acacia, is represented by the same counsel as Nexus.
[5] Fact discovery closed on September 7, 2015.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

extent the documents were privileged, that privilege was waived when they were disclosed to third-parties.   The common interest privilege does not salvage that waiver.   Instead, the fact that the documents were exchanged during negotiation for the sale of the Asserted Patents confirms that the parties did not share a common legal interest.   The District Court for the Southern District of New York reached the same conclusion after analyzing this *same transaction*, involving the *same documents*, and the *exact same agreement*.   On September 17, 2015, Movant again met and conferred with Acacia regarding these issues.   Acacia reaffirmed its position that the global license and standstill agreements are not relevant to the Nexus Litigation and that its redaction of the agreements was proper because they contain confidential third-party information.[6]   The parties are at an impasse on issues raised in this stipulation.

Acacia should be compelled to produce 1) unredacted copies of all relevant global and standstill agreements, including the agreements with Microsoft, Oracle, Cisco, and Apple; 2) all communications with Apple and Silicon Image related to the Asserted Patents; and 3) a witness to testify regarding these documents.

## B.     ACACIA'S INTRODUCTORY STATEMENT

Movant Dell, Inc. ("Movant" or "Dell") omits significant details and mischaracterizes the meet and confer with third party Acacia Research Group, LLC ("Acacia").   Specifically, Movant omits that fact discovery closed and the last day to file a discovery motion passed on September 7, 2015 in the underlying patent litigation. Movant now seeks documents on which Movant either did not previously meet and confer about or that Movant abandoned during the meet and confer.[7]   Setting

---

[6] The following week, Acacia confirmed by letter that it was not intending to produce the Apple agreement or communications, and continued to claim notice to third parties was required for other documents (but did not say if and when notice would go out to such third parties, or why it had not already gone out after months of meet and confer discussions).   Acacia also failed in that letter to commit to making any further production, let alone by any date certain.

[7] Movant confuses and conflates the issues by its refusal to provide a joint stipulation in the form required by Local Rule 37-2.1.   That rule illustrates the proper form of a joint stipulation:

*(left margin)* Winston & Strawn LLP  333 S. Grand Avenue  Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

aside these deficiencies, the requests are substantively flawed.   Most are not reasonably calculated to lead to the discovery of admissible evidence because the vast majority of the requests relate to patents that *not* asserted against Movant in the patent litigation and Movant makes no showing that these other patents are even related to the Asserted Patents.   Movant's requests for documents and testimony are improper and should be denied in their entirety.

As a means of background, Acacia and its affiliates partner with inventors and other patent holders, ranging from individual inventors and universities to Fortune 500 companies, and license those inventors' patented technologies to companies that are practicing the patents without the inventors' consent.   On May 15, 2013, Acacia partnered with Silicon Image by an agreement conveying twenty-three (23) Silicon Image patents to Acacia (the "First SI Agreement").   A year later, on April 11, 2014, Acacia and Silicon Image entered into a second agreement, covering another ten (10) Silicon Image patents, including the four (4) Asserted Patents (the "Second SI Agreement").   On or about June 16, 2014, Acacia subsidiary Nexus Display Technologies, LLC ("Nexus") received an assignment of the patents, including the Asserted Patents, and all of Acacia's rights and obligations under the Second SI Agreement.

On July 11, 2014, Nexus filed a patent infringement action against Dell in the Eastern District of Texas (the "Nexus Litigation").   Nearly a year later, Dell served a document subpoena on April 30, 2015 and a deposition subpoena on July 6, 2015.

---

For example, if the sufficiency of an answer to an interrogatory is in issue, the stipulation shall contain, verbatim, both the interrogatory and the allegedly insufficient answer, followed by each party's contentions as to that particular interrogatory, separately stated.

Local Rule 37-2.1   Instead of separately stating each request, response, and the parties' respective contentions for each such request, Movant has amalgamated different series of requests.   When Acacia informed Movant of this error, Movant refused to provide a joint stipulation on compliance with Rule 37-2.1, even though Acacia agreed to provide its portion of the stipulation in the original time required by the date of Movant's first, defective draft stipulation.   (Declaration of Annie H. Knuth ("Knuth Decl.") Ex. 16.)

4

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Following two extensions, September 7 was the final day for fact discovery and to file any motion to compel in the Nexus Litigation.  (Knuth Decl., Ex. 3.)  On September 9, 2015, two days *after* the deadline for any motion to compel, Dell sent a letter requesting a pre-filing conference of counsel pursuant to Local Rule 37-1.

First, Movant is attempting to circumvent the discovery scheduling order in the Nexus Litigation by seeking additional documents from third-party Acacia over two weeks *after* fact discovery closed in the Nexus Litigation.  For this reason alone, Movant's requests should be denied.

Second, Movant ignores the meet and confer by disregarding its concessions and failing to raise requests in Movant's letter seeking a pre-filing conference of counsel pursuant to Local Rule 37-1.  For example, Acacia objected to producing certain agreements on the grounds, *inter alia*, they were covered by confidentiality agreements that restricted Acacia's disclosure.  While these agreements are not relevant, Acacia agreed as a discovery compromise to produce them subject to Acacia's contractual confidentiality obligations.  Now, Movant ignores the objection and meet and confer, to demand that Acacia breach a contractual obligations with other third parties, including Apple, Inc.

Lastly, Nexus has possession, custody, and control over all documents pertaining to the actual Asserted Patents and Nexus has produced those documents to Dell.  Movant makes no assertion regarding any deficiency in the Nexus document production that would justify requiring Nexus' corporate parent, Acacia, to undergo a second search and production for documents pertaining to the Asserted Patents, and undermine the clear directives of the Federal Rules.

All that leaves are Acacia documents relating to other patents under separate "global" and standstill agreements, and the First SI Agreement.  For example, Movant mischaracterizes the deposition testimony of Cristin Wagner, the corporate designee of Nexus, concerning certain "global" and standstill agreements of Acacia's ultimate parent company, publicly-traded Acacia Research Corporation ("ARC").  None of

these agreements are a "license" to the Asserted Patents or any Silicon Image patent, or set any economic value for them.  Ms. Wagner's testimony is clear on this point.  At most, rights under these agreements relating to the Silicon Image patents are simple notice provisions – for ARC to provide updates on new patents that ARC or its subsidiaries acquired.  Thus, they are not relevant to any damages calculation under even the cases cited by Movant.

Moreover, upon signing the various contracts with Acacia, Silicon Image shared certain of its attorney-client privileged communications and attorney work product with Acacia in pursuant of their common legal interest in licensing and litigating the patents to those already using the patents without consent, *i.e.*, infringing.  Those confidential communications are protected under the common interest privilege and work product rule.

Accordingly, Movant's requests should be denied in their entirety.

## II.    REQUESTS IN DISPUTE AND ARGUMENTS

For the Court's convenience, Movant have grouped the requests in dispute into the following categories:

1.    Unredacted copies of all relevant global and standstill agreements, including the agreements with Microsoft, Oracle, Cisco, and Apple. Request No. 2;

2.    All communications with Silicon Image and Apple related to the Asserted Patents.  Request Nos. 4 and 6;

3.    Documents related to Acacia's and Silicon Image's activities before the Asserted Patents were transferred to Acacia.  Request Nos. 4, 5, 6, 8 and 16; and

4.    A witness to provide testimony regarding the documents and communications produced in response to 1-3 above.  Topic Nos. 2, 4, 10, and 17.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

### A. Category 1—Unredacted copies of all relevant global and standstill agreements, including the agreements with Microsoft, Oracle, Cisco, and Apple. Request No. 2

#### 1. Requests

**REQUEST NO. 2:**

All Licenses (including any amendments thereto) related to the Asserted Patents or the Related Patents, including but not limited to any Licenses entered into between Acacia and each of the listed companies:

1. Silicon Image

2. Nexus Display

**RESPONSE TO REQUEST NO. 2:**

ARG specifically incorporates herein its general objections to the extent applicable. ARG further specifically objects to the Request as vague and ambiguous including but not limited to the defined term "Acacia" as the definition intentionally conflates ARG with any of its subsidiaries. ARG will only respond on behalf of the entity to which the Subpoena was issued. ARG also specifically objects to the Request as overly broad and unduly burdensome at least to the extent that it seeks information that is already in Plaintiffs possession, custody and/or control or otherwise in the possession custody and/or control of the parties to this Action, or is a matter of public record easily obtainable by the subpoenaing party. ARG also specifically objects to this Request as overly broad, and unduly burdensome, insofar as it fails to specify the information sought with reasonable particularity and fails to specify a time frame. ARG objects to the extent the Request seeks disclosure of ARG's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business, or other sensitive information. ARG specifically objects to the Request to the extent it seeks information protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

7

1   privileges. ARG further objects to the Request to the extent it seeks production of
2   information covered by any judicial order, protective order, stipulation of
3   confidentiality, non-disclosure agreement, or confidentiality agreement with any non-
4   parties such that disclosure by ARG is restricted.

5          Subject to the foregoing general and specific objections, ARG responds
6   that to the extent the documents reasonably relate to the Patents-in-Suit and
7   any such documents exist, they have been provided to or are in the possession,
8   custody , or control of Plaintiff and that, on information and belief, Plaintiff is
9   complying or has complied with its discovery obligations in the above-
10  captioned matter.

### 2.     Movant's Argument

12         The global and standstill agreements are responsive to at least Request No. 2 of
13  the Acacia Subpoena and are relevant to at least the determination of a reasonable
14  royalty rate and the relevant FRAND terms at issue in the Nexus Litigation.  Nexus'
15  corporate representative Cristin Wagner, who is an employee of Acacia, testified that
16  global license agreements provided rights to several third parties to all of the patents
17  owned by Acacia and its subsidiaries, including the Asserted Patents.  For example,
18  these global licenses and agreements that include the Asserted Patents are relevant to
19  the first Georgia Pacific factor, "royalties received by the patentee for the licensing of
20  the patent in suit, providing or tending to prove an established royalty."  *Georgia-*
21  *Pacific Corporation v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120
22  (S.D.N.Y. 1970); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317
23  (Fed. Cir. 2011) ("This court has sanctioned the use of the Georgia-Pacific factors to
24  frame the reasonable royalty inquiry.").  The Responsive Documents are also relevant
25  to Georgia-Pacific factors 3, 4, 6, and 7.

26         Despite that the global and standstill agreements are relevant and responsive to
27  Request No. 2, Acacia has taken the position that the global and standstill agreements
28  are not responsive to Request No. 2 because the Asserted Patents are not specifically

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

8

identified in the global and standstill agreements.   Request No. 2 does not limit responsive documents to licenses which specifically name the Asserted Patents as long the license is related to the Asserted Patents or Related Patents.   There is no dispute that the global license and standstill agreements contain provisions to license the Asserted Patents.   *See* Ex. B, Wagner Dep Tr. 26:3-7.   The global and standstill agreements are related to the Asserted Patents.   Indeed, the Acacia and Silicon Image Agreement specifically says that with regard to at least two of the global and standstill agreements, the third parties "will obtain or will be granted, a license, release and/or covenant not to sue under the Patents."[8]   Ms. Wagner's testimony confirmed what the license says.   Acacia's argument that these global and standstill agreements do not license the Asserted Patents is not accurate.

Although Acacia has produced six agreements with Oracle, Microsoft, and Cisco, it has redacted all of the most relevant information from the agreements.   But unilateral redactions for relevance or confidentiality are improper.   *Evon v. Law Offices of Sidney Mickell*, 2010 U.S. Dist. LEXIS 20666, 2010 WL 455476, at *2 n.1 ("Redaction is, after all, an alteration of potential evidence.   The Federal Rules sanction only very limited unilateral redaction, *see* Fed. R. Civ. P. 5.2.   Outside of these limited circumstances, a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case.")   That is especially true when confidentiality concerns are addressed by a protective order.   *See Live Nation Merchandise, Inc. v. Miller*, 2014 U.S. Dist. LEXIS 65174, 10-11 (N.D. Cal. May 9, 2014).   In this case, Acacia designated its entire production under the operative protective order in the Nexus Litigation as "RESTRICTED—Outside Attorneys' Eyes Only" limiting "access to, and disclosure of, such protected material" to outside litigation counsel (and their employees) of record, experts, and the Court.   The protective order is sufficient to address Acacia's confidentiality concerns because it specifically prohibits access to

---

[8] Ex. F, Wagner Ex. 5 § 4.3.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

"RESTRICTED—Outside Attorneys' Eyes Only" materials by any in-house counsel or employees of the parties. Consequently, there can be no justifiable reason for Acacia redact these documents for relevance or confidentiality.

In addition, Acacia completely disregarded its obligations under Rule 45 when it failed to produce the Apple agreement(s). Acacia made assurances that it would produce the Apple agreement and waited until after fact discovery closed in the Nexus Litigation to inform Movant that "production … was contingent on receiving consent from the relevant parties, and Apple has not consented to ARG's disclosure of the agreement or related communication." Acacia cannot escape its obligations under Rule 45 by not producing the Apple agreement(s) because "Apple has not consented."

During the meet and confer, Movant proposed to resolve the dispute by requesting that Acacia produce all the global license agreements in unredacted form. Acacia resisted and claimed that only parts of the agreements are relevant, that the agreements contain third-party confidential information, and that the third-parties would not consent to production. As explained above none of these arguments has merit.

Movant request that the Court grant their motion to compel, and order Acacia to search for and produce unredacted copies of all responsive documents to Request No. 2 of the Acacia Subpoena.[9]

### 3.    Acacia's Argument

Movant's Joint Stipulation is untimely. Movant did not seek a pre-filing conference of counsel until two days after fact discovery closed in the Nexus Litigation, and did not submit its portion of the Joint Stipulation until over two weeks after fact discovery closed. On that basis alone, the Court should deny the Movant's requested relief.

---

[9] To the extent that Acacia withholds any document on the basis of privilege, Movants request the Court order Acacia to produce a privilege log sufficient to provide Dell sufficient information to assess the claim. *See* Fed. R. Civ. Pro. 45(e)(2)(ii).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

10

Further, the requested agreements with Microsoft, Cisco, Oracle, and Apple are not responsive to Request No. 2 in Dell's subpoena for documents and are not relevant to the Nexus Litigation. Acacia has repeatedly explained that the requested agreements do not license any of the Asserted Patents or any of the other Silicon Image patents. The requested agreements pre-date the acquisition of the Asserted Patents. Last, Acacia's redactions in the produced agreements and withholding of the Apple standstill agreement are the result of Acacia's honoring the objections and requests of Microsoft, Cisco, Oracle, and Apple, consistent with Acacia's contractual confidentiality obligations under the requested agreements. The Court should therefore deny Movant's requests for unredacted "global" agreements and standstill agreements with Microsoft, Cisco, Oracle, and Apple.

### a)   Movant's Requests For Documents And Testimony Are Untimely.

As a threshold matter, the documents and testimony that Movant requests should be denied in their entirety because Movant brought this Joint Stipulation over two weeks after fact discovery closed in the Nexus Litigation, and is therefore untimely.

In the Nexus action, September 7 was the final day for Dell to complete fact discovery and file motions to compel. (Knuth Decl., Ex. 3.) The September 7 cut-off was the result of *two* requested extensions in the Nexus Litigation. On November 21, 2014, Judge Rodney Gilstrap entered a Docket Control Order setting the fact discovery cut-off date at August 10, 2015. (*Id.* at Ex. 1.) On July 31, 2015, Judge Gilstrap extended the fact discovery deadline and deadline to file motions to compel to August 31, 2015. (*Id.* at Ex. 2.) On September 14, Judge Robert W. Schroeder III extended these deadlines from August 31, 2015 to September 7, 2015. (*Id.* at Ex. 3.) Despite being aware of these deadlines, Movant seeks to circumvent the scheduling and motion cut-offs established in the Nexus Litigation.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

---

11

Two days *after* the deadline passed, Movant sent its pre-filing letter pursuant to Local Rule 37-1 on September 9, 2015.  Then, after the parties' meet and confer discussion, Movant served its portion of the Joint Stipulation on the evening of September 22, 2015, two weeks *after* the discovery deadline passed.    The requests made in Movant's Joint Stipulation should be denied in their entirety as untimely.  *See McClintock v. Colosimo*, 2015 U.S. Dist. LEXIS 57664, at *3 (E.D. Cal. May 1, 2015) (denying plaintiff's motion to compel as untimely where the motion was filed after the discovery cut-off); *see also Clinton v. Cal. Dep't of Corr.*, 2009 U.S. Dist. LEXIS 42205, at *20 (E.D. Cal. May 11, 2009) (same).

>           **b)     The Requested Agreements With Microsoft, Cisco, Oracle, and Apple Are Not Responsive To Request No. 2 And Are Not Relevant Because The Agreements Do Not Provide Any License To Any Asserted Or Related Patent.**

The global agreements and standstill agreement are not responsive to Request No. 2 and those agreements are not reasonably calculated to lead to the discovery of admissible evidence.  That is because none of the agreements licenses any of the Asserted Patents or any other Silicon Image patent.

Request No. 2 seeks "All ***Licenses*** (including any amendments thereto) related to the Asserted Patents or the Related Patents . . . ."  (Emphasis added.)  The request does not seek all agreements that bear any relationship to the Asserted Patents or any other Silicon Image patent, including nominal notice rights.

Moreover, Movant is only entitled to documents and information that are reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).   Movant's own cited authority recognizes that license agreements, *i.e.*, agreements permitting the use of a patent for defined consideration, may be relevant to royalty rates in damages calculations.  *See*, *e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (discussing use of licensing agreements to determine possible royalty rate); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

12

However, during the meet and confer, Acacia has repeatedly explained that the global and standstill agreements do not license any of the Asserted Patents or any of the other Silicon Image patents.  (Knuth Decl., Ex. 9.)  Any rights to these patents are essentially procedural in nature; the agreements do not convey a right to practice any of the Silicon Image patents.  In fact, when informed of Movant's position, Apple's counsel stated, "I don't see how [ARC's global agreement with Apple and the related communication] are relevant to the case or responsive to request 2 since none are actually a license to the asserted patents."  (Knuth Decl., Ex. 13.)

Acacia's parent company, ARC, entered into each of the global agreements with Microsoft on September 30, 2011, Cisco on June 29, 2012, and Oracle on December 30, 2009; Acacia entered into a standstill agreement with Apple on April 5, 2013.  The global agreements provide each counterparty with rights to patents owned or controlled by ARC or its affiliates, as of the date of those agreements, including licenses, covenants not to sue or releases depending upon the particular patent.  As an exemplar, Exhibit 18 to the Knuth Declaration contains the redacted agreement between ARC and Cisco, as produced to Movant.  (Knuth Decl., Ex. 18.)  ARC and Acacia did not own or control any Asserted Patent or Silicon Image patent as of the dates of those agreements because Acacia did not acquire any Silicon Image patent until May 2013.  (Ranahan Decl. Ex. F.)  These agreements and their economic terms were negotiated without any contemplation or consideration of the Asserted Patents or any Silicon Image patent.  Thus, the global agreements did not "license" any patent relevant to this action.  Dell fails to explain how such agreements could relevant to any *Georgia-Pacific* factor or FRAND consideration.

During the term of each global agreement, ARC and its affiliates, and the counterparty agreed not to sue any of the counterparties or commence any adverse proceedings in any other forum.  (Knuth Decl., Ex. 18 at p. 12-13, §§ 6.1, 6.3.)  In addition, ARC covenanted on behalf of itself and its affiliates that it would not file suit, for the coverage term, against the counterparty for any new patents acquired by

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

13

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  ARC or its affiliates, defined as "Later-Obtained Patents" in the agreements. (Knuth

2  Decl., Ex. 18 at p. 2, 5, §§ 1.4, 2.3.) The Silicon Image patents from the First SI

3  Agreement are "Later-Obtained Patents." However, ARC did not license any Silicon

4  Image patent or any other Later-Obtained Patent.

5  The Apple standstill agreement contemplates a covenant-not-to-sue, release,

6  and standstill with respect to specific patents owned or controlled by ARC and its

7  affiliates at the time of the agreement's execution. The Apple standstill agreement

8  does not confer a license to any Silicon Image patent, or to any of ARC and its

9  affiliates' later-obtained patents. Pursuant to a related non-disclosure agreement,

10  ARC is required to give Apple reasonable prior written notice in advance of disclosing

11  the contents of the standstill agreement to third parties, in order to enable Apple to

12  seek protection from such proposed disclosure.

13  Movant mischaracterizes the deposition testimony of Ms. Wagner regarding

14  the global agreements. First, Movant cites Ms. Wagner's hypothetical explanation of

15  a global agreement. (*See* Ranahan Decl. Ex. B, Wagner Dep. Tr. 26:3-7.) Ms.

16  Wagner did ***not*** testify that Microsoft, Oracle, or Cisco had a license or right to

17  practice any Asserted Patent or any Silicon Image patent. Second, Ms. Wagner

18  actually testified that there are no companies that have taken a global license from

19  Acacia that include a license to any of the Asserted Patents, *i.e.*, Nexus Display

20  patents. (Ranahan Decl. Ex. B, Wagner Dep. Tr. 27:1-4.)

21  Now, Movant advances a wholly new theory of relevance based upon a notice

22  provision in the First SI Agreement, but takes the provision out of context.

23  Specifically, Movant cites Section 4.3 of First SI Agreement.[10] Movant never raised

24  this theory in its September 9 letter or the prior meet and confers, and only instead

25  _____

26  [10] Inexplicably, Exhibit F to the Declaration of Erin Ranahan in support of Movant's Joint Stipulation is not the operative agreement in the Nexus Litigation but rather, an earlier agreement for an entirely different patent portfolio between Acacia and Silicon Image. Accordingly, despite Movant's new arguments that certain of the requested global agreements may be referenced in an agreement in dispute in the Nexus Litigation, Movant still fails to provide any support of this contention, either in prior meet and confer efforts or in its portion of the Joint Stipulation.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

raised it in the Joint Stipulation.  (Knuth Decl., Exs. 9, 10, 14.)  The Court may reject the request on Movant's failure to meet and confer.  *See Davis v. L.A. West Travelodge*, 2009 U.S. Dist. LEXIS 124424, at *2 (C.D. Cal. May 20, 2009) (denying plaintiff's joint stipulation to compel deposition testimony and noting that "it appears that no good faith pre-filing conference in this case" because "each party should have [left] the [pre-filing] conference knowing the facts and law of what the other party is going to argue"); *cf. Whitlock v. City of Caliente*, 2014 U.S. Dist. LEXIS 139550, at *3-4 (D. Nev. Oct. 1, 2014) (denying motion to compel where movant failed to meet and confer before filing supplement that raised new issues regarding different discovery requests, because the parties must "meaningfully discuss *each* contested discovery dispute in a genuine effort to avoid judicial intervention") (emphasis added).

Had Movant raised this issue during the meet and confer, the First SI Agreement could have placed in its proper context.  Section 4.3 informs Silicon Image of the pre-existing global agreements.  Critically, the provision informs Silicon Image that the global agreement counterparties may not be sued during the term of the each respective global agreement, *i.e.*, a covenant not to sue for a limited time, and that Silicon Image will not receive any additional financial consideration for the limited period of the covenant not to sue.

The little value—if any—of the global agreements to Movant's case is substantially outweighed by the detriment that would result from disclosing Acacia's and other third parties' highly confidential and sensitive business information.[11]

---

[11]  Although the global agreements are not relevant, Acacia is willing to provide the Court with copies of the requested global agreements with Apple, Microsoft, Oracle, and Cisco, and amendments thereto, for *in camera* review.

15

1  
2  
3  
4

Winston & Strawn LLP  
333 S. Grand Avenue  
Los Angeles, CA 90071-1543

        **c)**      **Redactions In The Produced Global Agreements And Withholding Of The Apple Standstill Agreement Are The Result Of Acacia's Honoring The Objections And Requests Of Microsoft, Cisco, Oracle, And Apple, Consistent With Acacia's Contractual Confidentiality Obligations.**

The global agreements contain a number of highly negotiated and stringent confidentiality and notice covenants, and the agreements themselves contain highly sensitive, non-public business information.  Acacia objected to producing these various agreements on the grounds, *inter alia*, that: "to the extent the [Request No. 2] seeks production of information covered by… stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by [Acacia] is restricted."  During the meet and confer, when Movant first requested ARC's global agreements with Microsoft, Cisco, Oracle, and Apple  (which are neither responsive nor relevant), Acacia informed Movant that those agreements are subject to strict confidentiality obligations to each of these third parties.  (Knuth Decl., Ex. 9.)  Indeed, the global agreements contemplate that, to the extent ARC intends to disclose the terms of the agreements to a third party, ARC is contractually obligated to provide reasonable prior written notice of such disclosure in order to enable the counterparty to the agreement to seek protection from such disclosure. (*See*, *e.g.*, Knuth Decl., Ex. 18 at p. 16, § 7.2.)

As a discovery compromise, Acacia agreed to produce the global agreements subject to its objections and notice obligations.  (Knuth Decl., Ex. 9.)  Acacia provided the required written notice and later produced the Microsoft, Cisco, and Oracle agreements with the redactions agreed upon by these parties.  (Knuth Decl., Ex. 12)  When Movant demanded unredacted versions of the agreements, Acacia offered to make a further request of Microsoft, Cisco, and Oracle.  (*Id.* at Ex. 15.)  However, Movant demanded immediate production of wholly unredacted versions of these global agreements, and refused to allow Acacia to provide any further reasonable notice pursuant to express provisions contained in each of the global

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

agreements. (*Id.*) The fact that there is a protective order in the Nexus Litigation does not negate Acacia's contractual obligations.

Apple, however, has declined to permit Acacia to produce even a redacted form of its standstill agreement. After receiving Acacia's notice, Apple requested to review a copy of Movant's subpoena, along with any proposed redacted documents for production. (Knuth Decl., Ex. 13.) After review and further discussion with Acacia's counsel, Apple stated that it was "unable to give consent to production of these documents at this time" (and recognized that the document was not even responsive).[12] (*Id.*)

Movant essentially has ignored Acacia's contractual obligations and demanding that Acacia produce agreements in unredacted form over the objection of Acacia's counter-parties, particularly for these non-responsive and irrelevant documents. The confidentiality interests of these third parties should not be disregarded lightly. *See, e.g.*, *Abbott Labs. v. Teva Pharm. USA, Inc.*, 2006 U.S. Dist. LEXIS 94165, at *31 (D. Del. Mar. 1, 2006) (protecting confidentiality interests of third-parties in discovery order by providing that producing party may temporarily withhold production of otherwise discoverable information, "if the party is under an obligation to a third-party not to disclose such information," so the party may provide notice to the third-party whose confidentiality interests are implicated); *see also Scott v. Las Vegas Metro. Police Dep't*, 2011 U.S. Dist. LEXIS 148167, at *18-19 (D. Nev. Dec. 23, 2011) (acknowledging in entry of protective order that the order did not "relieve any Party or non-party from any pre-existing confidentiality obligations currently owed by any Party or non-party to any other Party or non-party").

The Court should therefore deny Movant's request for unredacted versions of ARC's agreements with Microsoft, Oracle, Cisco, and Apple.

---

[12] Despite Movant's assertion that Acacia "waited until after fact discovery closed in the Nexus Litigation" to inform Movant that Apple did not consent to disclosure, Acacia informed Movant of Apple's objection the very same day that Acacia received Apple's response. (Knuth Decl., Exs. 12, 13.)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

### B.    Category 2— All communications with Silicon Image and Apple related to the Asserted Patents.  Request Nos. 4 and 6.

#### 1.    Requests

**REQUEST NO. 4:**

All Documents related to or reflecting your negotiations with Silicon Image regarding the Asserted Patents, including any documents regarding (a) any offer for any of the Asserted Patents or for a group of patents including any of the Asserted Patents, (b) any valuation of the Asserted Patents (either individually or as part of a larger group of patents), (c) the methodology or stated rationale for either Silicon Image's or Your valuation of the Asserted Patents or group of patents including the Asserted Patents, (d) the validity of the Asserted Patents, (e) any infringement analysis related to the Asserted Patents, (f) any investigation into the Asserted Patents conducted by You or obtained from Silicon Image, and (g) any amount paid by You for rights to the Asserted Patents, either individually or as part of a group of patents.

**RESPONSE TO REQUEST NO. 4:**

ARG specifically incorporates herein its general objections to the extent applicable. ARG further specifically objects to the Request as vague and ambiguous including but not limited to the defined term "Your" as the definition intentionally conflates ARG with any of its subsidiaries. ARG will only respond on behalf of the entity to which the Subpoena was issued. ARG also specifically objects to the Request as overly broad and unduly burdensome at least to the extent that it seeks information that is already in Plaintiffs possession, custody and/or control or otherwise in the possession custody and/or control of the parties to this Action, or is a matter of public record easily obtainable by the subpoenaing party. ARG specifically objects to the extent the Request seeks ARG's unretained expert opinion. Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii). ARG also specifically objects to this Request as overly broad, and unduly burdensome, insofar as it fails to specify the information sought with reasonable particularity and fails to specify a time

frame. ARG objects to the extent the Request seeks disclosure of ARG's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business, or other sensitive information. ARG specifically objects to the Request to the extent it seeks information protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges. ARG further objects to the Request to the extent it seeks production of information covered by any judicial order, protective order, stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARG is restricted. ARG objects to this Request to the extent it seeks information that is neither relevant to the subject matter of this Action nor reasonably calculated to lead to the discovery of admissible evidence. ARG specifically objects to this Request as vague and ambiguous, including but not limited to the use of the word/phrase "agreements."

**REQUEST NO. 6:**

All Communications that You have had with Silicon Image or any other entity regarding the Asserted Patents or the Related Patents, including but not limited to documents relating to acquiring any ownership or financial interest in those patents.

**RESPONSE TO REQUEST NO. 6:**

ARG specifically incorporates herein its general objections to the extent applicable. ARG further specifically objects to the Request as vague and ambiguous including but not limited to the defined term "You" as the definition intentionally conflates ARG with any of its subsidiaries. ARG will only respond on behalf of the entity to which the Subpoena was issued. ARG also specifically objects to the Request as overly broad and unduly burdensome at least to the extent that it seeks information that is already in Plaintiffs possession, custody and/or control or otherwise in the possession custody and/or control of the parties to this Action, or is a matter of public

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

record easily obtainable by the subpoenaing party. ARG specifically objects to the extent the Request seeks ARG's unretained expert opinion. Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii). ARG also specifically objects to this Request as overly broad, and unduly burdensome, insofar as it fails to specify the information sought with reasonable particularity and fails to specify a time frame. ARG objects to the extent the Request seeks disclosure of ARG's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business, or other sensitive information. ARG specifically objects to the Request to the extent it seeks information protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges. ARG further objects to the Request to the extent it seeks production of information covered by any judicial order, protective order, stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARG is restricted. ARG objects to this Request to the extent it seeks information that is neither relevant to the subject matter of this Action nor reasonably calculated to lead to the discovery of admissible evidence. ARG specifically objects to this Request as vague and ambiguous, including but not limited to the use of the word/phrase "ownership or financial interest.

Subject to the foregoing general and specific objections, ARG responds that to the extent the documents reasonably relate to the Patents-in-Suit and any such documents exist, they have been provided to or are in the possession, custody, or control of Plaintiff and that, on information and belief, Plaintiff is complying or has complied with its discovery obligations in the above-captioned matter.

### 2. Movant's Argument

Movant seeks Acacia's communications with Silicon Image and Apple related to the Asserted Patents and the Related Patents. These communications are relevant and covered by the requests in the Acacia Subpoenas. The communications with

20

Silicon Image are relevant to at least Movant's defenses of damages and laches. The communications with Apple are also relevant at least to damages as Ms. Wagner testified that Nexus had communicated with Apple about the Asserted Patents and that Acacia has "a standstill agreement in place with Apple that just recently expired."[13]

With regard to the Silicon Image communications, Acacia claims that it is not obligated to produce communications related to the Asserted Patents and would be too burdensome for it to produce. For communications about the Related Patents, Acacia claims that these are privileged. Movant explain in Category #3 why none of these communications are covered by any privilege. Acacia's position that the documents are not in its possession, custody, or control and would be burdensome to produce is also not well founded.

Nexus is a wholly owned subsidiary of Acacia. Nexus has no employees and no property. Nexus, like numerous other Acacia subsidiaries, uses the office space and servers of Acacia. Further, Acacia employees working on the Asserted Patents for Nexus use Acacia email addresses. Legally, "[n]umerous courts have concluded that a parent corporation has a sufficient degree of ownership and control over a wholly-owned subsidiary that it must be deemed to have control over documents located with that subsidiary." *LG Display Co. v. Chi Mei Optoelectronics Corp.*, No. 08CV2408-L(POR), 2009 WL 223585, at *3 (S.D. Cal. Jan. 28, 2009); *see also United States v. International Union of Petroleum and Indus. Workers, AFL–CIO*, 870 F.2d 1450, 1452 (9th Cir.1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.")

Further, Acacia contends that production of these documents would be too burdensome because its subsidiary Nexus has allegedly already produced these documents. That argument too is not persuasive. As an initial matter, Nexus has produced less than 30,000 pages of documents. Thus, any duplication in document production would not be very substantial at all. Further, as courts have recognized,

---

[13] Ex. B, Wagner Dep. at 22:2-17, 121:25-123:2, 125:23-127:5

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Movant are entitled "to test the accuracy and completeness of the defendants' discovery responses and their denials that additional information exists." *LG Display Co. v. Chi Mei Optroelectronics Corp.*, No. 08CV2408-L(POR), 2009 WL 223585, at *3 (S.D. Cal. Jan. 28, 2009).  The means that Acacia must produce the requested documents to test the sufficiency of Nexus's production.

During the meet and confer, Movant proposed to resolve the dispute by requesting that Acacia produce all communications with Silicon Image and Apple related to the Asserted Patents.  Acacia refused.

Movant request that the Court grant their motion to compel, and order Acacia to produce all communications with Silicon Image and Apple related to the Asserted Patents.

### 3.    Acacia's Argument

Movant's Joint Stipulation is untimely and inappropriately amalgamates separate, distinct requests contrary to Local Rule 37-2.1.  To avoid further confusion, Acacia has organized its response to the separate issues arising from these requests seeking distinct categories of documents and the discovery compromises reached during the meet and confer for these distinct categories.

**a)    Nexus Already Produced All Non-Privileged Documents Responsive To Request No. 4 Concerning The Asserted Patents And Movant Abandoned This Request During The Meet And Confer.**

First, Movant agreed to receive and has received all non-privileged documents concerning the Asserted Patents from Nexus, rather than Acacia.  Acacia objected to Request No. 4 (and any other request extending to the Asserted Patents) on the basis, *inter alia*, that the request is over board and unduly burdensome because the documents are "in the possession[,] custody and/or control of the parties to this Action."  During the meet and confer, Acacia stood by this objection because Nexus has possession, custody, or control over all documents relating to the Asserted Patents and any additional search and production by Acacia would be duplicative.  And, as

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

detailed below, Movant abandoned seeking these same documents from Acacia. Critically, Movant does not dispute that it received all responsive, non-privileged documents concerning the Asserted Patents from Nexus. Movant also does not suggest any defect or deficiency concerning Nexus's production. Indeed, Movant acknowledges that Nexus produced more than 30,000 pages of documents; Movant merely wishes that more documents existed. That is not a basis to move to compel.

Demanding Acacia to re-produce identical documents is "unreasonably cumulative or duplicative," since these documents "can be [and have been] obtained from some other source that is more convenient, less burdensome, or less expensive." *See* Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 45(d). In fact, a magistrate judge in the Eastern District of Texas recently denied a motion to compel Acacia to produce the same type of duplicative documents Dell claims is warranted here. (Knuth Decl., Ex. 19, *Adaptix, Inc. v. Alcatel-Lucent USA, Inc., et al.*, Nos. 6:12-cv-22, 6:12-cv-122, 6:12-cv-00123 (E.D. Tex. Aug. 14, 2014) (order denying motion to compel third-party Acacia Research Group, LLC to produce documents that a party had already produced in the underlying litigation).)

The *Adaptix* decision is consistent with other courts refusing to compel third parties to produce documents available to party opponents in other similar circumstances. *See, e.g.*, *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 977-78 (Fed. Cir. 1993) (requiring party to seek discoverable material from party opponent prior to commencing ancillary proceeding against nonparty for purposes of obtaining relevant documents); *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 576-77 (N.D. Cal. 2007) (granting motion to quash third-party subpoena where "the vast majority of the discovery sought . . . is discovery obtainable from a source more direct, convenient and less burdensome – namely, from Defendants"); *First Aviation Servs. v. Gulf Ins. Co.*, 205 F.R.D. 63, 69 (D. Conn. 2001) (denying motion to compel production of documents from third-party because defendant possesses documents sought by plaintiff).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

The decision in *In re Plastics Additives Antitrust Litig.* ("*Plastics*"), No. 03-2038, 2005 U.S. Dist. LEXIS 47979 (E.D. Pa. Aug. 9, 2005), is particularly instructive. In *Plastics*, the court quashed a subpoena, finding that the subpoena was "unduly burdensome because . . . the desired documentation [was] obtainable from a more convenient source—the class plaintiffs." 2005 U.S. Dist. LEXIS 47979, at *12 (citing Fed. R. Civ. P. 26(b)(2)). The court further held that "because plaintiffs . . . possess all documents requested pursuant to the subpoena, it is more convenient and less burdensome to seek such documentation from plaintiffs than from [the third-party]." *Id.* at *13.[14]

Indeed, Movant suggests no deficiency in the document production from Nexus, or any evidence that Acacia somehow has unique documents concerning the Asserted Patents. In *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014), the court quashed defendant's subpoena to a non-party after, among other things, determining that the defendant failed to show that the same information was not obtainable from party witnesses. 300 F.R.D. 406, 412 n.6. Similarly, in response to a motion to compel production of documents by a third-party, the court in *Software Rights Archive, LLC v. Google, Inc.* determined that "there is reason to believe that Respondents each have unique documents." No. 09-CV-017-JJF, 2009 U.S. Dist. LEXIS 43835, at *9 (D. Del. May 21, 2009). Movant has not shown that Nexus and Acacia have unique documents pertaining to the Asserted Patents. Indeed, the court in *Software Rights* supports Acacia's position that "where, for example . . . a party seeks a specific document from both a non-party and an opposing party that is nonetheless *surely* in the hands of the opposing party, there is far less need to burden the non-party, *if at all*." *Id.* at *8-9 (emphasis added).

Acacia's position as a parent company to Nexus does not alter these requirements. Movant's reliance on *LG Display Co. v. Chi Mei Optroelectronics Corp.*, No. 08-CV-2408-L(POR), 2009 WL 223585, at *3 (S.D. Cal. Jan. 28, 2009) is

---

[14] *Plastics* was later vacated on other grounds.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

misplaced.  In fact, the court's order in *LG Display Co.* is consistent with Acacia's position:  There, the subsidiary was ordered to produce "all responsive documents that are accessible from its parent in the ordinary course of business."  *Id.* at *11.  Acacia and its subsidiary, Nexus, have undeniably made clear and affirmed that all documents related to the Asserted Patents are accessible to and in the possession, custody, or control of Nexus, and accordingly, have been produced or are obtainable from Nexus. (Knuth Decl., Exs. 4, 5, 9.)

    <u>Second</u>, because Movant accepted the production of all documents pertaining to the Asserted Patents from plaintiff Nexus, Movant abandoned Request No. 4 (and any other request pertaining to the Asserted Patents).  Indeed, the August 12, 2015 letter memorializing an earlier meet and confer reflects that Movant was only interested in Acacia producing documents pertaining to the Silicon Image patents under the First SI Agreement under the broad notion that those patents are "Related Patents."[15]  (Knuth Decl., Exs. 9, 10.)  On September 3, 2015 Kathleen Barry, counsel for Movant, asked Acacia to confirm that Acacia would be producing the documents indicated in its August 12 letter.  (Knuth Decl., Ex. 11.)  Acacia confirmed its agreement that same day.  (*Id.*)  Movant made no objection and did not suggest that Acacia produce any category of documents for the Asserted Patents.  (*Id.*)  Then, during the pre-filing conference on September 17, Movant disregarded the parties' prior agreements and demanded all documents related to the Asserted Patents and the Second SI Agreement.  (Knuth Decl., Ex. 15.)

    *Khalil v. Transunion, LLC*, 2008 U.S. Dist. LEXIS 83520 (E.D. Mich. Oct. 20, 2008), is instructive.  There, defendant objected to plaintiff's discovery requests in a timely fashion so plaintiff was on "clear notice" that defendant "did not intend on answering them."  2008 U.S. Dist. LEXIS 83520, at *7.  The plaintiff failed to follow up with the defendant regarding these requests, and thereafter "engaged in a discovery

---

[15] Movant concedes in its Introductory Statement, however, that Acacia only agreed to produce "non-privileged documents related to the first license agreement with Silicon Image."

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  conference and submitted a joint discovery plan that included a category for

2  'Outstanding or Anticipated Discovery Disputes'" approximately four months later.

3  *Id.*  Based on these facts, the court concluded that plaintiff "did not have a good faith

4  basis to believe that the discovery requests made in May, 2008, were viable."  *Id.* at

5  *9.

6       Dell has engaged in the same conduct as the plaintiff in *Khalil*.  Movant had not

7  raised any concerns regarding Acacia's production of documents responsive to

8  Request No. 4.  (Knuth Decl., Exs. 9, 10, 15.)  Now, nearly two months later and three

9  weeks after the fact discovery cut-off has passed in the Nexus Litigation (*see* Knuth

10  Decl., Ex. 3), Movant is improperly attempting to obtain additional documents from

11  Acacia after abandoning their request for these documents.  Movant's actions fail to

12  satisfy the letter and spirit of the meet and confer contemplated in Local Rule 37-1.

13  *Cf. Whitlock,* 2014 U.S. Dist. LEXIS 139550, at *3-4.

14       **b)  Nexus Has Produced All Responsive, Non-Privileged Documents For The Asserted Patents Under Request No. 6; Acacia Is Voluntarily Producing All Responsive, Non-Privileged Documents For The "Related Patents," Even Though Those Documents Are Not Relevant.**

15

16

17       To the extent Request No. 6 pertains to the Asserted Patents, Movant already

18  received the responsive, non-privileged documents from Nexus, Movant has not

19  demonstrated a basis to compel duplicative documents from Acacia, and Movant

20  abandoned the request during the meet and confer, as set forth above.

21       During the meet and confer, Movant clarified that it sought Acacia's

22  communications with Silicon Image under the earlier First SI Agreement between

23  Acacia and Silicon Image as "Related Patents."  Such documents bear no relevance to

24  the Nexus Litigation and only bear the similarity of having the same former patent

25  holder, Silicon Image, with the Asserted Patents.  Even in its Joint Stipulation, Dell

26  fails to address any of the Related Patents or how any Related Patent is relevant to any

27  of the damages issues it raises, such as how the patents are comparable to the Asserted

28

1   Patents, the types of technologies the patents concern, or the type of applications for

2   the patents.

3   However, as a discovery compromise, Acacia agreed to produce those

4   documents or otherwise log any privilege documents.   Acacia already served a

5   privilege log, and as a result of the meet and confer on September 17 and Acacia's re-

6   examination of the documents on the privilege log, Acacia will produce certain

7   documents erroneously withheld as privileged and an updated privilege log no later

8   than October 2, 2015.

9   Movant is not entitled to any document protected by applicable privileges.

10   While Movant has failed to provide the Court with Acacia's privilege log, Acacia may

11   protect: (1) its attorney-client privileged communications; (2) attorney work product;

12   and (3) those documents protected under the common interest privilege.   Movant

13   raises no contention in its Joint Stipulation to documents protected under the first two

14   privileges, and address the common interest assertions in "Category 3" of the Joint

15   Stipulation below.   As a result, Acacia addresses the applicable privilege and burdens

16   to overcome a privilege objection below, but those arguments have equal weight here.

17

18   **c)   Request No. 6 Pertaining To Apple Is Not Relevant To Litigation And Acacia Is Honoring Apple's Refusal To Consent To Authorizing Acacia To Produce This Document.**

19

20   For the reasons discussed above, the Apple agreement is not relevant because it

21   is not a license.   The related communication between ARC and Apple is no different.

22   Moreover, Apple expressly declined to consent to Acacia's production of the letter

23   relating to ARC's agreement with Apple.   (Knuth Decl., Ex. 13.)   Movant continues to

24   ignore Acacia's contractual obligations with respect to its agreement with Apple.   *See,*

25   *e.g.*, *Abbott Labs*, 2006 U.S. Dist. LEXIS 94165, at *31; *Scott*, 2011 U.S. Dist. LEXIS

26   148167, at *18-19.   The Court should thus deny Movants' request for ARC's

27   communication with Apple relating to ARC's agreement with Apple.

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Accordingly, the Court should deny Movant's requests for ARC's communications with Apple and for Acacia's communications relating to the Second SI Agreement.

**C.    Category 3—Documents related to Acacia's and Silicon Image's activities regarding the Asserted Patents.  Request Nos. 4, 5, 6, 8 and 16.**

**1.    Requests**

**REQUEST NO. 4:  (See Category 2)**

**REQUEST NO. 5:**

All documents made available to You by Silicon Image in connection with negotiations or due diligence regarding the Asserted Patents.

**RESPONSE TO REQUEST NO. 5:**

ARG specifically incorporates herein its general objections to the extent applicable. ARG further specifically objects to the Request as vague and ambiguous including but not limited to the defined term "You" as the definition intentionally conflates ARG with any of its subsidiaries. ARG will only respond on behalf of the entity to which the Subpoena was issued. ARG also specifically objects to the Request as overly broad and unduly burdensome at least to the extent that it seeks information that is already in Plaintiffs possession, custody and/or control or otherwise in the possession custody and/or control of the parties to this Action, or is a matter of public record easily obtainable by the subpoenaing party. ARG specifically objects to the extent the Request seeks ARG's unretained expert opinion. Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii). ARG also specifically objects to this Request as overly broad, and unduly burdensome, insofar as it fails to specify the information sought with reasonable particularity and fails to specify a time frame. ARG objects to the extent the Request seeks disclosure of ARG's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business, or other sensitive information. ARG specifically objects to the Request to the extent it seeks information

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges. ARG further objects to the Request to the extent it seeks production of information covered by any judicial order, protective order, stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARG is restricted. ARG objects to this Request to the extent it seeks information that is neither relevant to the subject matter of this Action nor reasonably calculated to lead to the discovery of admissible evidence. ARG specifically objects to this Request as vague and ambiguous, including but not limited to the use of the word/phrase "negotiations or due diligence."

Subject to the foregoing general and specific objections, ARG responds that to the extent the documents reasonably relate to the Patents-in-Suit and any such documents exist, they have been provided to or are in the possession, custody, or control of Plaintiff and that, on information and belief, Plaintiff is complying or has complied with its discovery obligations in the above-captioned matter.

**REQUEST NO. 6: (See Category 2)**

**REQUEST NO. 8:**

All Documents related to any analysis, conclusion, or valuation of the Asserted Patents or the Related Patents, including but not limited to (a) any non-infringement analysis, (b) invalidity analysis, (c) other analysis regarding the scope of the claims, and (d) any valuation attributed to the Asserted Patents and the Related Patents in Acacia's financial statements or other financial documents, taxation-related documents, or audit-related documents.

**RESPONSE TO REQUEST NO. 8:**

ARG specifically incorporates herein its general objections to the extent applicable. ARG further specifically objects to the Request as vague and ambiguous including but not limited to the defined term "You" as the definition intentionally

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

conflates ARG with any of its subsidiaries. ARG will only respond on behalf of the entity to which the Subpoena was issued. ARG also specifically objects to the Request as overly broad and unduly burdensome at least to the extent that it seeks information that is already in Plaintiffs possession, custody and/or control or otherwise in the possession custody and/or control of the parties to this Action, or is a matter of public record easily obtainable by the subpoenaing party. ARG specifically objects to the extent the Request seeks ARG's unretained expert opinion. Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii). ARG also specifically objects to this Request as overly broad, and unduly burdensome, insofar as it fails to specify the information sought with reasonable particularity and fails to specify a time frame. ARG objects to the extent the Request seeks disclosure of ARG's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business, or other sensitive information. ARG specifically objects to the Request to the extent it seeks information protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges. ARG further objects to the Request to the extent it seeks production of information covered by any judicial order, protective order, stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARG is restricted. ARG objects to this Request to the extent it seeks information that is neither relevant to the subject matter of this Action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing general and specific objections, ARG responds that to the extent the documents reasonably relate to the Patents-in-Suit and any such documents exist, they have been provided to or are in the possession, custody, or control of Plaintiff and that, on information and belief, Plaintiff is complying or has complied with its discovery obligations in the above-captioned matter.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**REQUEST NO. 16:**

Documents sufficient to show any investigation by You, Nexus Display, or Silicon Image prior to the initiation of any Nexus Litigation as to whether any products that comply or are compatible with the DisplayPort Standard infringe any Asserted Patent, including but not limited to any reverse-engineering efforts and any pre-suit investigation into potential infringement allegations.

**RESPONSE TO REQUEST NO. 16:**

ARG specifically incorporates herein its general objections to the extent applicable. ARG further specifically objects to the Request as vague and ambiguous including but not limited to the defined term "You" as the definition intentionally conflates ARG with any of its subsidiaries. ARG will only respond on behalf of the entity to which the Subpoena was issued. ARG further objects that this Request seeks documents or information that are not within ARG' s present possession, custody, or control. ARG also specifically objects to the Request as overly broad and unduly burdensome at least to the extent that it seeks information that is already in Plaintiffs possession, custody and/ or control or otherwise in the possession custody and/or control of the parties to this Action, or is a matter of public record easily obtainable by the subpoenaing party. ARG specifically objects to the extent the Request seeks ARG's unretained expert opinion. Fed. R. Civ. P. 45( d)(3)(B)(i)-(ii). ARG also specifically objects to this Request as overly broad, and unduly burdensome, insofar as it fails to specify the information sought with reasonable particularity and fails to specify a time frame. ARG objects to the extent the Request seeks disclosure of ARG's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business, or other sensitive information. ARG specifically objects to the Request to the extent it seeks information protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges. ARG further objects to the Request to the extent it seeks

31

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

production of information covered by any judicial order, protective order, stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARG is restricted. ARG objects to this Request to the extent it seeks information that is neither relevant to the subject matter of this Action nor reasonably calculated to lead to the discovery of admissible evidence. ARG specifically objects to this Request as vague and ambiguous, including but not limited to the use of the word/phrases "competed or currently compete" and "alternatives."

Subject to the foregoing general and specific objections, ARG responds that to the extent the documents reasonably relate to the Patents-in-Suit and any such documents exist, they have been provided to or are in the possession, custody, or control of Plaintiff and that, on information and belief, Plaintiff is complying or has complied with its discovery obligations in the above-captioned matter.

### 2. Movant's Argument

Acacia has no credible basis to deny the responsiveness of the documents Movant's requested related to Acacia's and Silicon Image's activities related to the Asserted Patents. For example, Movant seek documents related to the negotiation of the transfer of the Asserted Patents between Acacia and Silicon Image. (Movant's Request Nos. 3 and 4.) Movant also requested documents 1) analyzing the value of the patents-in-suit, 2) analyzing infringement or invalidity of the Asserted Patents (Movant's Request No. 8.), and 3) pertaining to Silicon Image and Acacia's FRAND commitments (Movant's Request No. 16). These documents and other related documents may provide key data regarding the *Georgia Pacific* factors during the hypothetical negotiation between the party holding the Asserted Patents and the defendant, and are the proper subject of discovery. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) (noting that settlement agreement is relevant hypothetical negotiation); *Small v. Nobel Biocare USA, LLC*, 808 F. Supp. 2d 584, 590 (noting the discoverability of settlement licenses and documents related to

32

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

settlement licenses); *Microsoft Corp.v. Acacia Research Corp.*, 2014 WL 6450254 (finding pre-suit analysis communicated between Acacia and seller of patent-in-suit discoverable); *Biax Corporation v. Nvidia Corp.*, 271 F.R.D. 200, *213-14 (ordering production of licenses regarding technology comparable to patents-in-suit).

Unable to make credible relevance objections, Acacia instead relies on vague objections that Nexus has all documents "related to the patents-in-suit." But, the availability of documents to a party of a lawsuit does not relieve a non-party from its obligations to search for and produce responsive documents. *See Kilopass Technology Inc. v. Sidense Corp.*, 2011 WL 2470493 (N.D. Cal. Jun. 21, 2011) (noting that while it is likely that some of the documents requested by a subpoena exist within the files of a party, rejecting a non-party's objection that the requests are duplicative or unduly burdensome); *L.G. Electronics, Inc. v. Motorola, Inc.*, 2010 WL 3075755, *5-6 (N.D. Ill. 2010) (granting motion to compel documents despite objection from non-party that such documents are equally available to party); *In re Honeywell Intern., Inc. Securities Litigation*, 230 F.R.D. 293, 300-301 (S.D.N.Y. 2003) (rejecting non-parties' argument that because documents are equally available to a party, that it need not produce them).

Further, Nexus has denied that it obtained all of the responsive documents requested by Movant, which is consistent with its production of fewer than 300 documents. By refusing to produce documents to Movant and by deciding what to make available to Nexus (its wholly-owned subsidiary), Acacia has unilaterally decided the scope of discovery. For example, in response to questions about the Acacia's objections and whether Nexus had access to everything relevant to the lawsuit, Acacia merely responded that Nexus had access to "all documents related to the patents-in-suit." (Ex. C, [Jun. 15, 2015 Email from Nguyen to Thompson].) Acacia has not defined what it means by "documents related to the patents-in-suit." Moreover, Movant are entitled to discovery broader than "documents related to the patents-in-suit." For example, Movant are entitled to documents regarding Acacia's

33

business model, its RAND policies, and its license agreements related to similar technology. Acacia has not produced the documents and does not appear to have provided them to Nexus.

It would not be unduly burdensome for Acacia to respond to the Acacia Subpoenas. If Acacia truly "transferred" all documents "related to the patents-in-suit" to Nexus, as it has claimed (Ex. D [June 24, 2015 Email from Nguyen to Thompson]), given that Nexus was created shortly over a year ago, it would not be burdensome from Acacia to simply reproduce that same production of documents, or explain the scope and content of that transfer. And, Movant are entitled to know how many documents Silicon Image made available to Acacia during Acacia's acquisition of the patents over and above the 300 documents Nexus has produced to Movant.

Further, as an interested party who retains rights in the Asserted Patents and in this litigation, Acacia is not a typical third party entitled to avail itself of Rule 45's protection of disinterested neutrals and is not entitled to avail itself. Indeed, Acacia is entitled to a portion of any revenue generated as a result of The Nexus Litigation. In *VirnetX, Inc. v. Microsoft Corp.*, No. 6:07 CV 80, 2008 WL 8894682, *7 (E.D. Tex. June 4, 2008), the Eastern District of Texas explained that it would not allow a "non-party with a substantial economic interest in the lawsuit and substantial control over either the plaintiff or the rights to the patent-in-suit to shield, delay production of, or defray the costs of producing items the plaintiff would be obligated to produce under Rule 26, the Local Rules, particularly L.R. 26 and P.R. 3–2, and the Discovery Order." "Such an interested non-party may not use agreements or shell entities to obtain the benefit of this Court's liberal discovery policy while the interested non-party shelters under Rule 45, escalates an accused infringer's litigations costs, and withholds discoverable information." *Id.* This is precisely the approach Acacia has taken in this case, which should not be tolerated.

Acacia's privilege claims are also without merit. In the *Lenovo* case, Lenovo filed a motion to compel the documents in category #3 in The Nexus Litigation. That

motion establishes why, to the extent the documents in category #3 were privileged, the exchange of those documents waived privilege because Acacia and Silicon Image did not share a common legal interest.  Quite the opposite, they were adversaries negotiating the sale of the Asserted Patents at arms length.  The motion also also establishes that documents created by Silicon Image cannot be work product because Silicon Image never anticipated litigation related to the Asserted Patents.

Lenovo is not the first party to question Acacia's privilege claim regarding this same agreement.  The District Court for the Southern District of New York reached the *same conclusion* after analyzing the *same transaction*, involving the *same documents*, and the exact *same agreement*.  It too concluded that privilege of the documents in category #3 was waived, and it ordered Acacia to produce the responsive documents.  Ex. G, Dkt. No. 113, *Microsoft Corp. v. Acacia Research Corp.*, No. 13-8275 (S.D.N.Y. Nov. 17, 2014).

In sum, Movant's document requests seek relevant documents.  Acacia's response would not be unduly burdensome and is required by the law.  Acacia's claim that Nexus has all documents related to the Asserted Patents is unsupported and vague.  And Acacia does not have a valid claim that the documents are attorney-client communications or attorney work product.  During the meet and confer, as a first step, Movant attempted to resolve the issue by requesting information regarding the documents provided to Nexus.  Acacia refused.  And, Acacia is hardly entitled to Rule 45's protection of typical third parties uninvolved in the litigation.  Accordingly, Movant respectfully requests that Acacia be ordered to produce the documents.

### 3.    Acacia's Argument

As set forth above, Movant's Joint Stipulation is untimely and may be denied on that basis alone. Movant's Joinst Stipulation also inappropriately amalgamates separate, distinct requests contrary to Local Rule 37-2.1 with respect to its characterization of requests sought in "Category 3."  The Court may deny the Movant's requested relief for its non-compliance with the Local Rules.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

35

Moreover, Movant has received all non-privileged documents pertaining to the Asserted Patents and abandoned its Request Nos. 4, 6, 8, and 16 concerning the Asserted Patents.  With respect to the Related Patents encompassed by Request Nos. 6 and 8, Acacia has provided a privilege log and agreed to produce any non-privileged documents by October 2, 2015.   Movant's challenges to Acacia's assertions of privilege fail procedurally because Movant does not satisfy its burden of challenging specific entries on the privilege log, and substantively, because Acacia enjoys the right to attorney-client communications, attorney work product, and in this instance the common interest privilege for certain materials exchanged by Silicon Image.

       **a)**     **Requests Nos. 4, 6, 8, And 16 Regarding The Asserted Patents Should Be Denied Because Movant Already Received All Non-Privileged Documents From Nexus And Suggests No Reason For Acacia To Duplicates Its Efforts.**

<u>First</u>, as explained above for Request No. 4, Nexus is in possession of all documents relating to the Asserted Patents and that Nexus had produced all such documents.  (Knuth Decl., Exs. 4, 5, 9.)  Movant does not identify any deficiencies in that document production or suggest that Acacia  may possess documents different from or in addition to the documents that Nexus possesses.

As explained above for Request No. 4 and equally applicable to Request Nos. 5, 8, and 16 concerning the Asserted Patents, Movant provides no reason for Acacia re-produce identical documents, when the documents can be "obtained from some other source that is more convenient, less burdensome, or less expensive," in this case Nexus.  *See* Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 45(d); *see also*, *e.g.*, *Haworth, Inc.*, 998 F.2d at 977-78 (Fed. Cir. 1993); *Nidec Corp.*, 249 F.R.D. 575, 576-77 (N.D. Cal. 2007); *Plastics*, 2005 U.S. Dist. LEXIS 47979, at \*12-13.   The absence of deficiencies in Nexus's document production or unique documents in Acacia's possession demonstrates that there is ***no*** basis for Acacia to undergo the expense and time to produce identical documents.  *See*, *e.g.*, *Amini Innovation Corp.*, 300 F.R.D. 406; *Software Rights Archive, LLC*, 2009 U.S. Dist. LEXIS 43835, at \*8-9.

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

36

Movant's cited authority does not suggest otherwise, but instead follows this jurisprudence that a party first seek documents from its opponent in a lawsuit, rather than a non-party, unless the non-party possesses unique or different documents. *See*, *e.g.*, *Kilopass Tech., Inc. v. Sidense Crop.*, 2011 U.S. Dist. LEXIS 65610, at *7-8, 2011 WL 2470493 (N.D. Cal. June 21, 2011) (granting motion to compel, where subpoena' request to customer was narrowed to documents *not* in defendant's possession and subpoenaing party offered to pay reasonable production charges); *LG Elecs., Inv. v. Motorola, Inc.*, 2010 U.S. Dist. LEXIS 79047, 2010 WL 3075755 (N.D. Ill. Aug. 5, 2010) (following *Haworth* and denying motion to compel third party, prior patent holder Motorola to produce e-mails and patent ownership documents already in plaintiff's possession); *In re Honeywell Intern. Secs. Litig.*, 230 F.R.D. 293, 300-01 (S.D.N.Y. 2003) (granting motion to compel, in part, because third party's documents were unique and different than defendant's; stating that "The documents in PWC's possession may differ slightly from Honeywell's copies. The PWC copies could include handwritten notes, and the fact that PWC has copies of documents itself can be relevant.").

Movant also claims that because Acacia is the corporate parent of Nexus, however, that it should not be permitted to rely upon Rule 26 and Rule 45 jurisprudence. However, the Adaptix decision rejected the same contention for Acacia concerning the litigation of its subsidiary Adaptix. (Knuth Decl., Ex. 19, *Adaptix, Inc. v. Alcatel-Lucent USA, Inc., et al.,* Nos. 6:12-cv-22, 6:12-cv-122, 6:12-cv-00123 (E.D. Tex. Aug. 14, 2014) (denying motion to compel Acacia to produce documents that a party had already produced by its subsidiary in the underlying litigation).)

*VirnetX, Inc. v. Microsoft Corp.*, No. 6:07 CV 80, 2008 U.S. Dist. LEXIS 94854, 2008 WL 8894682 (E.D. Tex. June 4, 2008), is inapposite. The case does not construe any discovery request or order the production of any document. Instead, in *VirnetX*, the court found that plaintiff lacked standing and joined SAIC as a necessary

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

37

party motion under Rule 19.  2008 U.S. Dist. LEXIS  94854, at *18-20.  In so doing, the court analyzed SAIC's direct economic interest in the patents and because SAIC was made a party to the action, SAIC could no longer rely upon Rule 45, but instead was subject to Rule 26.  *Id.* at *21.  Here, Dell undertakes no analysis of the Silicon Image agreements, Acacia's "substantial economic interest" in the litigation, or any purported interest in the patents-in-suit.  That is telling because Acacia has no direct interest following the assignment of the Asserted Patents and Second SI Agreement to Nexus, all Acacia has is the equity interest of shareholder in its subsidiary.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary."); *see also Top Victory Elecs. v. Hitachi Ltd.*, No. C 10-01579 CRB, 2010 U.S. Dist. LEXIS 125003, at *10-11 (N.D. Cal. Nov. 15, 2010).

<u>Second</u>, Movant generally challenges Acacia's privilege assertions on its privilege log, but these challenges fail procedurally and substantively.  As a procedural matter, a party withholding a document on the basis of privilege satisfies its initial burden by providing a privilege log, as Acacia did.  *See*, *e.g.*, *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) ("We have previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach.").  The burden then shifts to the opposing party, here Dell, to identify the particular documents for which it challenged the assertion of privilege.  *Miller v. Pancucci*, 141 F.R.D. 292, 299 (C.D. Cal. 1992) (noting in federal privilege cases, a party need only "specifically identify[] the records at issue so that the requesting party has an opportunity to challenge the [privilege] assertion").  Movant also bears the burden to demonstrate a privilege waiver.  *See Sleep Sci. Partners Inc. v. Lieberman*, 2010 U.S. Dist. LEXIS 119963, at *2 (N.D. Cal. Oct. 26, 2010) ("If a party claims there has been a waiver, it bears the burden of establishing a prima facie case of waiver.").  In fact, Movant's own cited authority is consistent with this approach.  *In re Honeywell*, 230 F.R.D. at 300 ("As the Court advised counsel, it

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

will not review unspecified allegedly privileged documents because the parties bear the burden of directing the Court to the specific documents and log entries they argue are withheld incorrectly."). Here, Movant has failed to provide the Court with Acacia's privilege log and fails to challenge designation on the privilege log, and thus Movant's request to the extent it extends to any privileged document must be denied.

Substantively, Movant does not challenge any attorney-client or work product assertion. Thus, Movant has failed to meet its burden to show a waiver. *See Sleep Sci. Partners Inc*., 2010 U.S. Dist. LEXIS 119963, at *2.

Movant's challenge to the common interest privilege is contrary to the weight of authority, including decisions from within this circuit. A common interest exists between two parties if:  (1) the parties share a common interest; (2) the disclosing party had a reasonable expectation of confidentiality; and (3) the disclosure is reasonably necessary. *Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 528-29 (E.D. Cal. 2010).

For example, *In re Regents of the University of California*, 101 F.3d 1386 (Fed. Cir. 1996) ("*Regents*"), the Federal Circuit protected communications between Eli Lilly's attorneys and attorneys for University of California ("UC"). *Id.* at 1389-91. Eli Lilly had an option agreement to license certain UC patents upon successful prosecution of the patents. *See id.* UC and Eli Lilly's attorneys exchanged legal analyses relating to prior art searches ***before*** Eli Lilly exercised its option. *Id.* In a declaratory relief action challenging patent validity, the district court granted a motion to compel the production of those materials. *Id.*

Granting mandamus relief, the Federal Circuit found the parties shared a common legal interest in strong and enforceable patents. *Id.* The Federal Circuit explained:

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1
2
3
4
5
6
7
8
9

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

> [W]e conclude that the legal interest between Lilly and UC
> was substantially identical because of the potentially and
> ultimately exclusive nature of the Lilly-UC license
> agreement. Both parties had the same interest in obtaining
> strong and enforceable patents. The district court erred in
> concluding that Lilly and UC did not have an identical legal
> interest in the '877 patent and its foreign counterparts
> because "a patentee and a nonexclusive licensee do not share
> identical legal interests." Lilly was more than a non-
> exclusive licensee, and shared the interest that UC would
> obtain valid and enforceable patents. UC is a university
> seeking valid and enforceable patents to support royalty
> income. Lilly is an industrial enterprise seeking valid and
> enforceable patents to support commercial activity. Valid
> and enforceable patents on the UC inventions are in the
> interest of both parties.

*Id.* at 1390. Numerous courts have reached the same conclusion, including courts within this circuit. *See*, *e.g.*, *MobileMedia Ideas LLC v. Apple, Inc.*, 890 F. Supp. 2d 508, 516-17 (D. Del. 2012) (stating that "as evidenced by the various agreements" among the parties, the "purpose of the transfer of patent prosecution files and the [Invention Disclosure Forms] were part of the joint legal strategy … before MMI's formation and continued thereafter . . . [and] clearly share[d] a common legal interest" in enforcing the patents); *Morvil Tech., LLC v. Ablation Frontiers, Inc.,* 2012 U.S. Dist. LEXIS 30815, at *10 (S.D. Cal. Mar. 8, 2012) (following *Regents*; applying doctrine for documents shared between seller and prospective buyer during diligence); *Britesmile, Inc. v. Discus Dental, Inc.*, 2004 U.S. Dist. LEXIS 20023, at *9 (N.D. Cal. Aug. 10, 2004) (refusing to compel disclosure of patent opinions provided to a patent purchaser pre-acquisition); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310-12 (N.D. Cal. 1987) (applying doctrine to documents shared during diligence even though the transaction was never consummated).

Here, Silicon Image and Acacia share the similar, common legal interests in valid, enforceable patents. Under the First SI Agreement, after conveying the patents, Silicon Image received a grant back license to practice the patented technologies (Ranahan Decl. Ex. F at §§ 1.1, 2.1); a reversion to buy-back the patents (*Id.* at § 6.2);

40

and a continuing right to royalty payments from the recoveries "from the licensing, enforcement, or sale of the Patents." (*Id.* at § 3.3.)  Such rights align Silicon Image with Acacia's interests in licensing or litigating the patents for infringers, and defending the patents for challenges to their validity.

The First SI Agreement also requires cooperation between Silicon Image and Acacia.  First, Silicon Image is obligated to retain its records in anticipation of discovery in patent litigation and proceedings.  (*Id.* at § 1.5.)  Second, the agreement requires Silicon Image to be "available when necessary to assist and consult with [Acacia] or its attorneys on matters relating to the Patents," which may involve patent infringement litigation, the defense of a declaratory relief action, or proceedings before the United States Patent and Trademark Office (the "PTO").  (*Id.* at § 3.7.)  The First SI Agreement further requires Silicon Image "to reasonably cooperate … in any litigation … and any other matters in connection with prosecuting, licensing, enforcing or defending the Patents."  (*Id.* at § 6.1.)  A specific confidentiality clause safeguards each party's confidential information, including special provisions for privileged information.  (*Id.* at §§ 8.1, 8.2; *see also id.* at § 1.2.)

Indeed, another court in the Central District upheld common interest protection for privileged information exchanged between a predecessor to Acacia and one of its inventor partners.  *Diagnostic Sys. Corp. v. Symantec Corp.*, 2008 U.S. Dist. LEXIS 123915, at *33-35 (C.D. Cal. Aug. 12, 2008).  There, the court found that inventor Amado shared his own privileged materials because he had a right to royalties for licensing and enforcing the patents, under a similar agreement with a predecessor to Acacia.  2008 U.S. Dist. LEXIS 123915, at *33-35.  The court further found that Amado was actively involved in the litigation, demonstrating his contributions to the active case by attending depositions and court hearings.  *Id.*

Movant mistakenly relies upon the decision in *Microsoft Corp. v. Acacia Research Corp.*, No. 13 cv 8275 (PAC), 2014 U.S. Dist. LEXIS 161457 (S.D.N.Y. Nov. 17, 2014).  That order is not binding upon this Court.  *Starbuck v. City & Cnty. of*

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

41

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) ("The doctrine of stare decisis does not compel one district court judge to follow the decision of another."); *see also Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*, 240 F.3d 956, 965 (11th Cir. 2001) ("the district court cannot be said to be bound by a decision of one of its brother or sister judges.").

Moreover, that order is not persuasive because it is flawed for multiple reasons. First, that order is inconsistent with *Regents* and the weight of authority, recognizing that a patentee and licensee can share both legal interests in valid and enforceable patents co-existing with their commercial interests. The order does not even address *Regents* and other leading cases. Second, Acacia only asserts the common interest for privileged materials exchanged **after** Silicon Image and Acacia entered into the agreement, which set the economic terms. In other words, Acacia and Silicon Image were not adversaries in contract negotiation – a point that the order fails to address. Third, the order also failed to consider the choice of law provision designating federal law and Delaware state law in the First SI Agreement. (Ranahan Decl. Ex. F at § 7.2.) The law of both the Federal Circuit and Delaware approves of the application of the common interest in this precise situation.[16] *See, e.g., Regents*, 101 F.3d 1386, 1390 (Fed. Cir. 1996); *MobileMedia Ideas LLC v. Apple, Inc.*, 890 F. Supp. 2d 508, 516-17 (D. Del. 2012) (upholding common interest for documents exchanged between prospective shareholders or joint venture before formation of the joint venture entity); *Rembrandt Techs., L.P. v. Harris Corp*, 2009 Del. Super. LEXIS 46, at *24-26 (Feb. 12, 2009) (upholding common interest for diligence materials).

---

[16] To the extent the court applied New York law (as the forum state), the order is inconsistent with the subsequent decision in *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 998 N.Y.S.2d 329, 2014 N.Y. App. Div. LEXIS 8439 (Dec. 4, 2014) (applying common interest doctrine to protect privileged documents exchanged in the pre-merger context). Indeed, the order is inconsistent with its sister courts in the Southern District of New York, which have upheld the common interest where the parties shared expressly commercial interests and legal interests. *See, e.g., U.S. v. Bank of N.Y. Mellon*, 11-cv-6969 (LAK), 2014 U.S. Dist. LEXIS 159069 (S.D.N.Y. Nov. 10, 2014); *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64 (S.D.N.Y. 2009).

1    Accordingly, Movant's challenges to Acacia's privilege assertions fail both

2 procedurally and substantively.[17]

3    <u>Third</u>, Movant failed to meet and confer in good faith with Acacia with respect

4 to Request Nos. 4, 5, 8, and 16 and have abandoned these requests during the meet

5 and confer.  Request No. 4 is specifically addressed above, and Requests Nos. 5, 8,

6 and 16 fail for similar reasons to the extent they seek documents concerning the

7 Asserted Patents.   Following the meet and confer call in early August, as

8 memorialized in the August 12 letter, these Requests were no longer at issue because

9 Movant was no longer asking Acacia to produce any document concerning the

10 Asserted Patents.[18]  (Knuth Decl., Ex. 9.)  Under these circumstances, Movant cannot

11 attempt to resurrect its already abandoned requests.    *See Khalil*, 2008 U.S. Dist.

12 LEXIS 83520, at *7-9 (E.D. Mich. Oct. 20, 2008); *see also Davis*, 2009 U.S. Dist.

13 LEXIS 124424, at *2 (denying plaintiff's joint stipulation to compel deposition

14 testimony and noting that "it appears that no good faith pre-filing conference in this

15 case" because "each party should have [left] the [pre-filing] conference knowing the

16 facts and law of what the other party is going to argue"); *cf. Whitlock*, 2014 U.S. Dist.

17 LEXIS 139550, at *3-4.

18       **b)    Request Nos. 6  And 8 For The Related Patents Are
            Moot Because Acacia Will Serve A Revised Privilege Log**
19       **And Produce All Non-Privileged Responsive Documents
            On Later Than October 2, 2015.**
20

21    As previously explained for Request No. 6 and equally applicable to Request

22 No. 8, the Related Patent documents are not relevant to the Nexus Litigation and

23 Movant provides no explanation in its Joint Stipulation for relevance.  However,

24 during the meet and confer as a discovery compromise, Acacia agreed to produce or

25 ─────────────────────

26 [17] Movant refers to a motion to compel filed by Lenovo in the Eastern District of
Texas.  However, there is no decision on that motion.  Movant also may not "refer the
27 Court to any other documents" for its argument, other than evidence and legal
authority.  L.R.. 37-2.1.

28 [18] Movant abandoned Request No. 8 earlier during a conference on July 9, 2015.
(Knuth Decl., Ex. 5.)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  log Related Patent documents. Following the parties' meet and confer on September

2  17 and Acacia's re-examination of the privilege log, Acacia will produce responsive

3  documents that were erroneously designated as privileged and will serve an updated

4  privilege log no later than October 2, 2015. Accordingly, any motion pertaining to

5  the Related Patents from Request Nos. 6 and 8 will be moot.

6  To the extent Movant challenges any privilege assertion on Acacia's privilege

7  log, Movant fails procedurally to carry its burden of identifying specific documents on

8  the log. More importantly, any challenge will be moot by the revised privilege log.

9  **D.  Category 4—A witness to provide testimony regarding the**

10  **documents and communications produced in response to 1-3 above.**

11  **Topic Nos. 2, 4, 10, and 17.**

12  **1.  Requests**

13  **TOPIC NO. 2:**

14  The negotiation, authorship, creation, and acceptance, of any License,

15  assignment, settlement agreement, or transfer of rights (including any amendments

16  thereto) regarding the Asserted Patents or the Related Patents including any

17  valuations, invalidity, or infringement analyses for the Asserted or the Related patents,

18  either individually or part of a group of patents, and including but not limited to the

19  following Licenses entered into between Silicon Image and each of the listed

20  companies:

21
22
23
24
25
26
27
28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| **Company** | **Title** | **Effective Date** |
|---|---|---|
| Hitachi, Matsushita, Philips, Sony, Thomson and Toshiba | HDMI Specification Founder Agreement as Amended | 6/5/2002 |
| Nokia, Samsung, Sony, and Toshiba | Mobile High-Definition Link Specification Promoters Agreement | 3/30/2010 |
| Intel | Patent License Agreement | 9/16/1998 |
| MediaTek | Patent & Technology License Agreement | 12/19/2003 |
| MediaTek | Patent & Technology License Agreement 1 | 12/12/2005 |
| Nokia | Patent License Agreement | 1/15/2010 |
| Matsushita Electric Industrial (Panasonic) | Patent Cross License Agreement | 12/30/2002 |
| Philips | Confidential License Agreement as amended by Amendment | 1/1/2010 |
| Sony Corporation | Confidential License Agreement as amended by Amendment No. 2 | 10/1/2009 |
| Toshiba | Confidential License Agreement as amended by Amendment No. 2 | 4/1/2011 |
| Eizo Corporation | Settlement and Patent License Agreement | 2/24/2015 |
| Panasonic Corporation of North America | Settlement and Patent License Agreement | 1/14/2015 |
| Sony Corporation | Tolling Agreement | 3/2/2015 |

**RESPONSE TO TOPIC NO. 2:**

ARG specifically incorporates herein its General Objections to the extent applicable. ARG objects to the extent this Topic seeks information not within ARG's present possession, custody, or control. ARG specifically objects to this Topic as overly broad and unduly burdensome to the extent that it seeks information that is already in NDT's possession, custody, or control, or otherwise in the possession, custody, or control of the parties to this Action. ARG specifically objects to this Topic

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

as overly broad, unduly burdensome, and irrelevant to the extent that it seeks information not related to the Patents-in-Suit. ARG specifically objects to this Topic to the extent it purports to require ARG to produce documents and information created on or after the date of filing of the complaint in this Action. ARG specifically objects to the Topic to the extent it seeks information covered by any judicial order, protective order, stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARG is restricted. ARG specifically objects to the extent the Topic seeks disclosure of ARG's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business, or other sensitive information. ARG specifically objects to the Topic to the extent it seeks documents and information that are protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, settlement privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges. ARG objects to the extent that the Topic seeks ARG's unretained expert opinion. Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii); see, e.g., Mattel, Inc. v. Walking Mt. Prods., 353 F.3d 792, 814 (9th Cir. 2003) (quoting Fed. R. Civ. P. 45 1991 amend. note).

Subject to the forgoing objections, pursuant to Federal Rule of Civil Procedure 30(b)(6), ARG will designate a person to testify on its behalf regarding this Topic to the extent the Topic relates to the Patents-in-Suit as they relate to ARG.

**TOPIC NO. 4:**

Any interest that Silicon Image, Acacia, or Nexus have in each other or in any litigation related to the Asserted Patents.

**RESPONSE TO TOPIC NO. 4:**

ARG specifically incorporates herein its General Objections to the extent applicable. ARG objects to this Topic to the extent the definition of "Acacia" intentionally conflates ARG with and/or requires ARG to produce information on behalf of any of its affiliates or subsidiaries when the Subpoena was directed to ARG

46

alone. ARG will respond only on behalf of the entity to which the Subpoena was issued. ARG specifically objects to this Topic as overly broad and unduly burdensome to the extent that it seeks information that is already in NDT's possession, custody, or control, or otherwise in the possession, custody, or control of the parties to this Action. ARG specifically objects to this Topic as overly broad, unduly burdensome, and irrelevant to the extent that it seeks information not related to the Patents-in-Suit. ARG specifically objects to the Topic to the extent that it seeks information that is neither relevant to the subject matter of this Action nor reasonably calculated to lead to the discovery of admissible evidence. ARG specifically objects to the Topic to the extent it seeks information covered by any judicial order, protective order, stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARG is restricted. ARG specifically objects to the extent the Topic seeks disclosure of ARG's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business, or other sensitive information. ARG specifically objects to the Topic to the extent it seeks documents and information that are protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, settlement privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges. ARG specifically objects to the use of the word/ phrase "any interest" as vague and ambiguous.

**TOPIC NO. 10:**

Any analysis, conclusion, or valuation of the Asserted Patents and the Related Patents or any Silicon Image patent (whether conducted by You or at your behest, or conducted by someone else) including but not limited to any non-infringement analysis, invalidity analysis, or analysis regarding the scope of the claims of the Asserted Patents and the Related Patents or any Silicon Image patent and any valuation attributed to the Asserted Patents and the Related Patents or any Silicon Image patent known to You, regardless of whether You commissioned or conducted

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    such analyses, and including but not limited to NDT, Acacia, or Silicon Image's

2    financial statements or other financial documents, taxation-related documents, or

3    audit-related documents.

4    **RESPONSE TO TOPIC NO. 10:**

5        ARG specifically incorporates herein its General Objections to the extent

6    applicable. ARG objects to this Topic to the extent the definitions of "You" and/or

7    "Acacia" intentionally conflate ARG with and/or require ARG to produce information

8    on behalf of any of its affiliates or subsidiaries when the Subpoena was directed to

9    ARG alone. ARG will respond only on behalf of the entity to which the Subpoena was

10   issued. ARG specifically objects to this Topic as overly broad and unduly burdensome

11   to the extent that it seeks information that is already in NDT's possession, custody, or

12   control, or otherwise in the possession, custody, or control of the parties to this

13   Action. ARG specifically objects to this Topic as overly broad, unduly burdensome,

14   and irrelevant to the extent that it seeks information not related to the Patents-in-Suit.

15   ARG also specifically objects to this Topic as overly broad, and unduly burdensome,

16   insofar as it fails to specify the information sought with reasonable particularity and

17   fails to specify a time frame. ARG specifically objects to the Topic to the extent that it

18   seeks information that is neither relevant to the subject matter of this Action nor

19   reasonably calculated to lead to the discovery of admissible evidence. ARG

20   specifically objects to the Topic to the extent it seeks information covered by any

21   judicial order, protective order, stipulation of confidentiality, non-disclosure

22   agreement, or confidentiality agreement with any non-parties such that disclosure by

23   ARG is restricted. ARG specifically objects to the extent the Topic seeks disclosure of

24   ARG's trade secrets, proprietary knowledge, and/or confidential research,

25   development, commercial, business, or other sensitive information. ARG specifically

26   objects to the Topic to the extent it seeks documents and information that are

27   protected from discovery by the attorney-client privilege, the work product doctrine,

28   the consulting expert privilege, settlement privilege, the joint prosecution privilege,

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

the common interest privilege, and/or any other applicable privileges. ARG objects to the extent that the Topic seeks ARG's unretained expert opinion. Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii); see, e.g., Mattel, Inc. v. WalkingMt. Prods., 353 F.3d 792, 814 (9th Cir. 2003) (quoting Fed. R. Civ. P. 45 1991 amend. note). ARG specifically objects to the use of the wholly undefined word/ phrase "any Silicon Image patent" as vague and ambiguous.

**TOPIC NO. 17:**

All Communications that You, Nexus, or Silicon Image have had with any SSO (including but not limited to the High Definition Multimedia Interface Forum and VESA) regarding the creation, development, or modification of the HDMI Standard, DisplayPort Standard, or any standard related to transmission, conversion, and reception of video, audio, or auxiliary data, or communications to grant or deny Licenses to any of Your, Nexus, or Silicon Image's patents or pending patent applications on (F)RAND terms, including the identity of the SSO, the patent(s) and/or patent application(s) involved, the date of the (F)RAND commitment(s), and the nature and terms of the (F)RAND commitment(s), and all documents that discuss, refer to, or evince the same.

**RESPONSE TO TOPIC NO. 17**

ARG specifically incorporates herein its General Objections to the extent applicable.  ARG objects to this Topic to the extent the definition of "You" and/or "Your" intentionally conflates ARG with and/or requires ARG to produce information on behalf of any of its affiliates or subsidiaries when the Subpoena was directed to ARG alone. ARG will respond only on behalf of the entity to which the Subpoena was issued. ARG specifically objects to this Topic as overly broad and unduly burdensome to the extent that it seeks information that is already in NDT's possession, custody, or control, or otherwise in the possession, custody, or control of the parties to this Action. ARG specifically objects to this Topic as overly broad, unduly burdensome, and irrelevant to the extent that it seeks information not related to the Patents-in-Suit.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

49

ARG also specifically objects to this Topic as overly broad, and unduly burdensome, insofar as it fails to specify a time frame. ARG specifically objects to the Topic to the extent that it seeks information that is neither relevant to the subject matter of this Action nor reasonably calculated to lead to the discovery of admissible evidence. ARG specifically objects to the Topic to the extent it seeks information covered by any judicial order, protective order, stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARG is restricted. ARG specifically objects to the Topic to the extent it seeks documents and information that are protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, settlement privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges.  ARG specifically objects to the use of the undefined phrase "any standard related to the transmission, conversion, and reception of video, audio, or auxiliary data" as vague and ambiguous.

## 2.    Movant's Argument

Movant seek a witness to provide testimony regarding the documents and communications in Categories 1-3 above.  The Acacia Subpoenas sought testimony on those categories in at least Topic Nos. 2, 4, 10, and 17.  Testimony regarding the documents and communications in categories 1-3 above is necessary to authenticate the documents and communications and to permit Movant to understand the context in which they were authored.  Acacia's objections that these topics seek information that is already in the possession, custody, or control of Nexus are without merit, because the parties have confirmed that the documents and communications in categories 1-3, have not been provided to Nexus or produced to Dell.

In addition, to the extent Acacia argues that Movant have already deposed Acacia, Movant note that although Ms. Wagner, an Acacia employee, has testified, it was on behalf of Nexus.  The parties agreed to reschedule the deposition of Acacia, but now Acacia is objecting to providing a witness.  To the extent Acacia argues that

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

50

Acacia's testimony would be cumulative of Ms. Wagner's testimony on behalf of Nexus, Ms. Wagner was not prepared to testify regarding the documents subject to Movant's motion to compel.  For example, during her deposition, Ms. Wagner was not prepared to discuss the global and standstill agreements:

> Q BY MR. KLEIN: Have any companies ever taken
>
> 15 a global from Acacia Research Group?
>
> 16 MS. LIPSKI: Objection; form.
>
> 17 THE WITNESS: I believe there were some
>
> 18 companies years ago, a few years ago.
>
> 19 Q BY MR. KLEIN: Do those agreements provide
>
> 20 that when additional patents are added to the Acacia
>
> 21 Research Group sub patent portfolio that those would
>
> 22 be included in the global?
>
> 23 MS. LIPSKI: Objection; form.
>
> 24 THE WITNESS: I don't know. I haven't seen
>
> 25 them.

Ex. B, Wagner Dep. Tr. 27:14-25.

> Q BY MR. KLEIN: And you had mentioned that it
>
> 2 had been awhile but some companies may have taken a
>
> 3 global license. Could you tell me which companies
>
> 4 those are?
>
> 5 MS. LIPSKI: Objection; form.
>
> 6 THE WITNESS: I believe one, I think Microsoft
>
> 7 had one. I'm not sure. These weren't -- this
>
> 8 wasn't in that list of topics so I didn't really
>
> 9 prepare on it, so I'm trying to think. Maybe Oracle
>
> 10 was another one. I don't know.

Ex. B, Wagner Dep. Tr. 28:1-10.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

51

During the meet and confer, Movant proposed to resolve the dispute by requesting that Acacia provide a witness to provide testimony regarding the documents and communications in categories 1-3 above.  Acacia responded by stating that Acacia's proposed witness, Cristin Wagner, was already deposed and that it would not make her available again.  First, there is no dispute that Movant served a deposition notice on Nexus and a separate notice on Acacia.   Given Acacia's objecttions to the notice, Movant alerted Acacia that the deposition of corporate representative deposition of Nexus would not be the corporate representative deposition of Acacia. Acacia did not object to this notice. Movant are entitled to a prepared witness to testify regarding the documents and communications in categories 1-3 above. Accordingly, Movant respectfully requests that Acacia be ordered to provide a witness to testify regarding documents produced in response to categories 1-3.

### 3.     Acacia's Argument

As discussed above, Movant's requests may be denied as untimely and for non-compliance with Local Rule 37-2.1.  Moreover, Movant is not entitled to any of the documents it seeks pursuant to this Joint Stipulation, except for those that Acacia has already agreed to produce for Request Nos. 6 and 8, which are not relevant and Acacia only agreed to produce as a discovery compromise.  It follows that Movant is also not entitled to seek deposition testimony from Acacia.  First and foremost, fact discovery has already closed in the Nexus Litigation.  (Knuth Decl., Ex. 3.)  Second, Movant has effectively abandoned its subpoena seeking testimony by its failure to meet and confer with Acacia.

First, as stated above, fact discovery and the deadline to bring a motion to compel passed on September 7.  (Knuth Decl., Ex. 3.)  Movant provides no authority to excuse its failure to initiate the mandatory Rule 37-1 pre-filing conference and this motion before the deadline in the Nexus Litigation.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Second, Movant abandoned its deposition subpoena.  Acacia timely objected to Movant's deposition subpoena and informed Movant that a number of Topics for deposition can and would be addressed by Nexus's 30(b)(6) witness, Ms. Wagner. (Knuth Decl., Ex. 6.)  Thus, Acacia's deposition on the same information would be burdensome and duplicative. (*Id.*) If, after taking Nexus's deposition, Movant believed that Acacia's deposition was still necessary, Acacia invited Movant to meet and confer on the topics for deposition.  (*Id.*)  Movant then deposed Ms. Wagner on July 30.  (Knuth Decl., Ex. 7.)

On August 5, after taking Ms. Wagner's deposition, Movant demanded to take Acacia's deposition and stated that it would "follow-up again regarding Acacia's other objections to Movant's Rule 30(b)(6) deposition topics."  (Knuth Decl., Ex. 8.)  That same day, Movant and Acacia participated on a meet and confer call.  (Knuth Decl., Ex. 9.)  Though Acacia offered to meet and confer on the Topics listed in Movant's deposition subpoena, Movant's counsel declared that Movant was "going forward with the deposition notice" and that Movant "[did not] care about [Acacia's] objections."  (*Id.*)  In other words, Movant made no reasonable effort to meet and confer over the objections.  Instead, Movant affirmatively stated that it intended to depose Acacia on all sixty-six (66) overly broad topics, many of which were duplicative of topics on which Nexus had already testified. (*Id.*)  When Acacia invited Movant to identify any topics on which Movant believed Nexus provided inadequate testimony, Movant was unable to identify any.  (*Id.*)

Two days later, Movant stated in a letter that it would "send a separate letter regarding Acacia's improper objections."  (Knuth Decl., Ex. 10.)  Nearly two months later, Movant has yet to send any such letter or engage in further meet and confer efforts with Acacia regarding its deposition subpoena.  Therefore, Movant has abandoned its deposition subpoena in its entirety and cannot now seek testimony from Acacia—even in a limited scope—because it first flatly refused to meet and confer with Acacia and then, for nearly two months, failed to meet and confer with Acacia at

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

53

1   all regarding the deposition subpoena.  *See Khalil*, 2008 U.S. Dist. LEXIS 83520, at

2   *7-9 (E.D. Mich. Oct. 20, 2008).

3           Contrary to Local Rule 37-1, Movant never addressed Acacia's objections.

4   And, even in its the pre-filing letter and conference, Movant failed to address Acacia's

5   objections, particularly because Ms. Wagner had already testified and Movant failed

6   to address any deficiency in her testimony, particularly for any matter concerning the

7   Asserted Patents – the only relevant matters – in the Nexus Litigation.

8           While Acacia agreed as a discovery compromise to produce documents

9   concerning the Related Patents, Acacia never agreed to produce a deponent to discuss

10  them.   Thus, Acacia stands on its objection that matter concerning the "Related

11  Patents," other Silicon Image patents Acacia acquired in the First SI Agreement are

12  not relevant to any  issue in the Nexus Litigation.  Movant has not suggested any basis

13  for discovery to encompass these separate patents, that are not asserted against

14  Movant.

15          Accordingly, the Court should deny Movant's request for a second deposition

16  under these circumstances.

17                                      Respectfully submitted,

18
    DATED:  September 29, 2015          WINSTON & STRAWN LLP
19

20                                      By:   /s/ *Erin R. Ranahan*
                                              Erin R. Ranahan
21                                            Attorneys for Movant Dell, Inc.

22
    DATED:  September 29, 2015          STRADLING YOCCA CARLSON
23                                      & RAUTH, P.C.

24

25                                      By:   /s/ *Annie H. Knuth*
                                              Marc J. Schneider
26                                            Stephen L. Ram
                                              Annie H. Knuth
27                                            Nancy N. Nguyen
                                              Attorneys for Third Party Acacia
28                                            Research Group, LLC

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

<u>ATTESTATION</u>

I, Erin R. Ranahan, hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in this filing's contents and have authorized filing.

/s/ *Erin R. Ranahan*
Erin R. Ranahan

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

## ATTACHMENT TO JOINT STIPULATION

### Case No. 2:14-cv-00762
### Docket Control Order
### Dkt. No. 47
### 11/21/2014

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **NEXUS DISPLAY TECHNOLOGIES LLC,** | § | **Civil Action No: 2:14-cv-00762** |
| | § | **(Lead Case)** |
| **Plaintiff,** | § | |
| | § | **Jury Trial Requested** |
| **v.** | § | |
| | § | |
| **DELL INC.** | § | **Civil Action No: 2:14-cv-00762** |
| **LENOVO (UNITED STATES) INC.** | § | **Civil Action No. 2:14-cv-00763** |
| **PANASONIC  CORP. OF NORTH** | § | **Civil Action No. 2:14-cv-00764** |
| **AMERICA** | § | |
| **EIZO CORP. AND EIZO INC.** | § | **Civil Action No. 2:14-cv-00765** |
| **NEC CORP. AND NEC DISPLAY** | § | **Civil Action No. 2:14-cv-00766** |
| **SOLUTIONS OF AMERICA, INC.** | § | **(Consolidated Cases)** |
| | § | |
| **Defendants.** | § | |
| | § | |

**DOCKET CONTROL ORDER**

The Parties Joint Motion for Entry of Proposed Discovery Order (Dkt. No. 44) is hereby

GRANTED IN PART.  It is hereby ORDERED that the following schedule of deadlines is in

effect until further order of this Court:

| | |
|---|---|
| January 11, 2016 | *Jury Selection – 9:00 a.m. in **Marshall, Texas** before Judge Rodney Gilstrap |
| November 30, 2015 | *Pretrial Conference – 9:00 a.m. in **Marshall, Texas** before Judge Rodney Gilstrap |
| November 25, 2015 | *Notify Court of Agreements Reached During Meet and Confer<br><br>The parties are ordered to meet and confer on any outstanding objections or motions *in limine*.  The parties shall advise the Court of any agreements reached no later than 1:00 p.m. three (3) business days before the pretrial conference. |
| November 23, 2015 | *File Joint Pretrial Order, Joint Proposed Jury Instructions, Joint Proposed Verdict Form, and Responses to Motions *in Limine* |
| November 16, 2015 | *File Notice of Request for Daily Transcript or Real Time Reporting. |

|  | If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and e-mail the Court Reporter, Shelly Holmes, at shelly_holmes@txed.uscourts.gov. |
|---|---|
| November 9, 2015 | File Motions *in Limine*<br><br>The parties shall limit their motions *in limine* to issues that if improperly introduced at trial would be so prejudicial that the Court could not alleviate the prejudice by giving appropriate instructions to the jury. |
| November 9, 2015 | Serve Objections to Rebuttal Pretrial Disclosures |
| November 2, 2015 | Serve Objections to Pretrial Disclosures; and Serve Rebuttal Pretrial Disclosures |
| October 19, 2015 | Serve Pretrial Disclosures (Witness List, Deposition Designations, and Exhibit List) by the Party with the Burden of Proof |
| September 21, 2015 | *File Dispositive Motions or Motions to Strike Expert Testimony (including *Daubert* Motions)<br><br>No dispositive motion or motion to strike expert testimony (including a *Daubert* motion) may be filed after this date without leave of the Court. |
| September 21, 2015 | Deadline to Complete Expert Discovery |
| September 7, 2015 | Serve Disclosures for Rebuttal Expert Witnesses |
| August 10, 2015 | Deadline to Complete Fact Discovery and File Motions to Compel Discovery |
| August 10, 2015 | Serve Disclosures for Expert Witnesses by the Party with the Burden of Proof |
| July 27, 2015 | *Deadline to File Letter Briefs Regarding Dispositive Motions |
| July 20, 2015 | Deadline to Complete Mediation<br><br>The parties are responsible for ensuring that a mediation report is filed no later than 5 days after the conclusion of mediation.  *See* L.R. App. H. |
| July 13, 2015 | Comply with P.R. 3-7 (Opinion of Counsel Defenses) |

**Attachment to Joint Stipulation**
**Dkt. 47 (Docket Control Order)**

| June 22, 2015 | *Claim Construction Hearing – 9:00 a.m. in **Marshall, Texas** before Judge Rodney Gilstrap |
|---|---|
| June 8, 2015 | *Comply with P.R. 4-5(d) (Joint Claim Construction Chart) |
| June 1, 2015 | *Comply with P.R. 4-5(c) (Reply Claim Construction Brief) |
| May 25, 2015 | Comply with P.R. 4-5(b) (Responsive Claim Construction Brief) |
| May 11, 2015 | Comply with P.R. 4-5(a) (Opening Claim Construction Brief) and Submit Technical Tutorials (if any) |
| June 4, 2014 | Deadline to Substantially Complete Document Production and Exchange Privilege Logs<br><br>Counsel are expected to make good faith efforts to produce all required documents as soon as they are available and not wait until the substantial completion deadline. |
| April 20, 2015 | Comply with P.R. 4-4 (Deadline to Complete Claim Construction Discovery) |
| April 20, 2015 | File Response to Amended Pleadings |
| April 6, 2015 | *File Amended Pleadings<br><br>It is not necessary to seek leave of Court to amend pleadings prior to this deadline unless the amendment seeks to assert additional patents. |
| March 30, 2015 | Comply with P.R. 4-3 (Joint Claim Construction Statement) |
| March 9, 2015 | Comply with P.R. 4-2 (Exchange Preliminary Claim Constructions) |
| February 16, 2015 | Comply with P.R. 4-1 (Exchange Proposed Claim Terms) |
| January 9, 2015 | Comply with Paragraph 3 of the Discovery Order |
| December 22, 2014 | Comply with P.R. 3-3 & 3-4 (Invalidity Contentions) |
| November 24, 2014 | *File Proposed Protective Order and Comply with Paragraph 1 of the Discovery Order<br><br>The Proposed Protective Order shall be filed as a separate motion with the caption indicating whether or not the proposed order is opposed in any part. |
| November 17, 2014 | *File Proposed Docket Control Order and Proposed Discovery Order |

- 3 -

**Attachment to Joint Stipulation**
**Dkt. 47 (Docket Control Order)**

| | The Proposed Docket Control Order and Proposed Discovery Order shall be filed as separate motions with the caption indicating whether or not the proposed order is opposed in any part. |
|---|---|
| December 22, 2014 | Join Additional Parties |
| November 6, 2014 | *File Notice of Mediator |
| November 3, 2014 | Comply with P.R. 3-1 & 3-2 (Infringement Contentions) |

(*) indicates a deadline that cannot be changed without showing good cause.  Good cause is not shown merely by indicating that the parties agree that the deadline should be changed.

## ADDITIONAL REQUIREMENTS

**Notice of Mediator**:  The parties are to jointly file a notice that identifies the agreed upon mediator or indicates that no agreement was reached.  If the parties do not reach an agreement, the Court will appoint a mediator.  The parties should not file a list of mediators to be considered by the Court.

**Summary Judgment Motions**:  Prior to filing any summary judgment motion, the parties must submit letter briefs seeking permission to file the motion.  The opening letter brief in each of those matters shall be no longer than five (5) pages and shall be filed with the Court no later than the deadline for filing letter briefs.  Answering letter briefs in each of those matters shall be no longer than five (5) pages and filed with the Court no later than fourteen (14) days thereafter.  Reply briefs in each of those matters shall be no longer than three (3) pages and filed with the Court no later than five (5) days thereafter.  The Court may decide the question on the submissions or hold a hearing or telephone conference to hear arguments and to determine whether the filing of any motion will be permitted.  Letter briefs shall be filed without exhibits.  Any requests to submit letter briefs after the deadlines outlined above must show good cause.

**Indefiniteness**:  In lieu of early motions for summary judgment, the parties are directed to include any arguments related to the issue of indefiniteness in their *Markman* briefing, subject to the local rules' normal page limits.

**Motions for Continuance**:  The following excuses will not warrant a continuance nor justify a failure to comply with the discovery deadline:

(a)     The fact that there are motions for summary judgment or motions to dismiss pending;

(b)     The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

(c)     The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

- 4 -

**Attachment to Joint Stipulation**
**Dkt. 47 (Docket Control Order)**

**Amendments to the Docket Control Order ("DCO")**:  Any motion to alter any date on the DCO shall take the form of a motion to amend the DCO.  The motion to amend the DCO shall include a proposed order that lists all of the remaining dates in one column (as above) and the proposed changes to each date in an additional adjacent column (if there is no change for a date the proposed date column should remain blank or indicate that it is unchanged).  In other words, the DCO in the proposed order should be complete such that one can clearly see all the remaining deadlines and the changes, if any, to those deadlines, rather than needing to also refer to an earlier version of the DCO.

**So ORDERED and SIGNED this 21st day of November, 2014.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

## ATTACHMENT TO JOINT STIPULATION

**Case No. 2:14-cv-00762**
**Order re Fact Discovery, etc.**
**Dkt. No. 211**
**9/14/2015**

Case 2:14-cv-00762-RWS   Document 211   Filed 09/14/15   Page 1 of 1 PageID #:  4560

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **NEXUS DISPLAY TECHNOLOGIES LLC,** | § | **Civil Action No: 2:14-cv-00762-RWS** |
| | § | **(Lead Case)** |
| **Plaintiff,** | § | |
| | § | **Jury Trial Requested** |
| **v.** | § | |
| | § | |
| **DELL INC.** | § | **Civil Action No: 2:14-cv-00762-RWS** |
| **LENOVO (UNITED STATES) INC.** | § | **Civil Action No. 2:14-cv-00763-RWS** |
| | § | **(Consolidated Cases)** |
| | § | |
| **Defendants.** | § | |

### ORDER

.

The Court, upon consideration of the Unopposed Motion for Extension, finds that the motion should be GRANTED.

It is hereby ORDERED that the deadlines for the parties to complete fact discovery and file motions to compel discovery is extended to September 7, 2015.  The deadline to serve Expert Reports is September 23, 2015 and Rebuttal Expert Reports are due October 21, 2015.  The deadline to complete Expert Discovery is November 4, 2015.

**SIGNED this 14th day of September, 2015.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE